517 So.2d 236 (1987)
Rita C. KOLWE Wife of/and Frank R. Kolwe
v.
Penny TAYLOR and State Farm Insurance Company.
No. 86 CA 1400.
Court of Appeal of Louisiana, First Circuit.
November 10, 1987.
*237 Larry P. Boudreaux, Thibodaux, for plaintiffs, appellants.
Anthony Clesi, Jr., New Orleans, for Penny Taylor and State Farm Auto Ins. Co.-defendants-appellees.
Adrianne Baumgartner, Covington, for defendant, State Farm-appellee.
Before WATKINS, CARTER and CHIASSON[*], JJ.
WATKINS, Judge.
Rita C. Kolwe and her husband Frank R. Kolwe, plaintiffs, brought this suit against Penny Taylor for damages resulting from an automobile accident. State Farm Mutual Automobile Insurance Company (State Farm), was also joined as a defendant. State Farm provided liability insurance for the Taylor vehicle and underinsured motorist coverage for the Kolwe vehicle. The jury returned a verdict in favor of the defendants, stating that Taylor was not negligent. The plaintiffs filed and were denied a motion for judgment notwithstanding the verdict and in the alternative for a new trial. The plaintiffs have appealed the denial of these motions, as well as the jury verdict in favor of the defendants.
The accident occurred on May 17, 1983, at approximately 5:20 p.m. near Covington, Louisiana, on Louisiana Highway 36, a two-lane paved highway. The plaintiffs were traveling in a 1982 Toyota pickup truck driven by Mr. Kolwe. The Kolwe vehicle came to a stop in the eastbound lane due to a vehicle turning left several cars ahead of them. The defendant was driving a 1980 Ford, single-axle, F600 truck with a loaded trailer in the westbound lane. The defendant testified that he came around a curve in the westbound lane and noticed that his lane of traffic was stopped, and he approximated that he had forty-five (45') feet in *238 which to stop his vehicle. When the defendant applied his brakes the truck went sideways, disconnecting the brake linkage between the truck and trailer and causing the defendant to lose control over his vehicle. At this point the truck swerved sideways into the eastbound lane, sideswiping the vehicle directly ahead of the plaintiffs and then striking the plaintiffs head-on.
The plaintiffs both sustained physical injuries due to the accident, and continue to suffer emotionally from the traumatic experience. Both Mr. and Mrs. Kolwe were thrown into the windshield of their truck and sustained head, back and neck injuries. They were seen later that day at Highland Park Hospital where x-rays were taken and a neck brace was prescribed for Mrs. Kolwe.
The plaintiffs raise three errors on appeal:
I. The verdict of the jury, finding in favor of the defendants, is manifestly erroneous.
II. The jury committed manifest error in failing to find for the plaintiffs and to award them damages.
III. Because of the possible insufficiency of evidence on the issue of damages, the court may consider remanding this case to the district court for receipt of additional evidence.
We find no need to address the first two errors due to erroneous jury instructions constituting reversible error. Gonzales v. Xerox Corporation, 320 So.2d 163 (La. 1975).

JURY INSTRUCTIONS
We have previously held in Beck v. Lovell, 361 So.2d 245 (La.App. 1st Cir.1978), writ denied, 362 So.2d 802 (La.1978), the following:
In a jury trial, the judge is not required to give the precise instructions submitted by either party, but he must give instructions which properly reflect the law applicable in the light of the pleadings and facts in each particular case. If instructions concerning negligence and liability are confusing or misleading, or omit an applicable essential legal principle, such instructions constitute reversible error. Gonzales v. Xerox corporation, 320 So.2d 163 (La. 1975). Id., at 250. (Emphasis ours)
The jury in this case was charged that the burden of proof was on the plaintiffs to establish by a preponderance of the evidence that the defendants were negligent and that if the plaintiffs failed to establish negligence, the defendants could not be held liable. We find this instruction to be patently incorrect based on the facts of this particular case. Although the general rule is that the burden of proof in a personal injury case is upon the plaintiff, there are exceptional cases where the plaintiff is not required to prove the negligence of the defendant. One such instance is when a plaintiff-motorist is without fault and is struck head-on by an oncoming motorist in the plaintiff's lane of traffic. Simon v. Ford Motor Co., 282 So.2d 126 (La.1973). In such cases the law presumes that the oncoming motorist is negligent and "the driver is required to exculpate himself of any fault, however slight, contributing to the accident." Simon, supra at 133.
The Supreme Court explained the rationale for this rule in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978) as follows:
Simon v. Ford Motor Co.,... followed the rationale of Rizley v. Cutrer, 232 La. 655, 95 So.2d 139 (1957), which was based on a presumption of negligence arising when one left his own traffic lane and struck another. The burden of proof on such a motorist was to show that he was not guilty of any dereliction, however slight. This burden of proof was imposed in Rizley v. Cutrer because "it seems only reasonable ... that a motorist owes ... the duty of remaining in his own lane...." 232 La. 655, 663, 95 So.2d 139, 142.
In the instant case the defendant admits leaving his lane of traffic and striking the plaintiffs' vehicle head-on. Furthermore, the trial court denied the defendant's requested jury charge on contributory negligence because the court found no evidence *239 to prove negligence on the part of the plaintiffs. Based on these conclusions of fact it was the defendant's burden to exculpate himself from any fault, however slight, contributing to the accident, and the trial court's failure to include this instruction constituted reversible error, so the jury verdict must be set aside.
In cases where the appellate court has all the facts before it, as we do here, a trial judge's erroneous instruction to the jury does not warrant a remand. Gonzales v. Xerox Corporation, 320 So.2d 163 (La. 1975). Accordingly, we will decide the case on the record before us.
The primary issue to be resolved by this court is whether the defendant sustained his burden of proof to exculpate himself from any fault on his part. The evidence presented by the defendant established that he was traveling with a loaded trailer on Highway 36, a road he was familiar with, when he rounded a curve and was confronted with stopped traffic in his lane. The defendant applied his brakes and was unable to stop when his trailer brakes disconnected. The defendant offered no testimony concerning the maintenance of the trailer brakes or why they disconnected upon application of his brakes. Further, the record is devoid of evidence as to how fast the defendant was travelling, or what the posted speed limit was. The defendant did testify that he was familiar with Highway 36 and that he knew of several businesses located near the site of the accident. The record also reflects that the accident occurred during daylight hours on a clear day.
The law provides that every motorist has a duty to keep his vehicle under control and to maintain a proper lookout for hazards which by the use of ordinary care and observation he should be able to see in time to avoid them. Schilling v. U.S. Fidelity & Guaranty Company, 487 So.2d 127 (La.App. 1st Cir.1986), writ denied, 488 So.2d 1027; Lindstrom v. Arnold, 421 So.2d 1178 (La.App. 2d Cir.1982), writ denied, 423 So.2d 1183; LSA-R.S. 32:58. Vehicles which have stopped in order to turn are a common hazard on two-lane highways. This is especially true in the instant case where businesses are located nearby and require vehicles to turn directly from the highway. Another common hazard of driving is reduced visibility due to curves, hills, weather conditions, other motorists, etc. However, diminished visibility does not lower a motorist's duty of care, but rather increases it to a level commensurate with the risk involved.
This court recently held in Fontenot v. Boehm, 512 So.2d 1192 (La.App. 1st Cir. 1987), that a motorist who was unable to see a turning vehicle due to a van directly in front of him, blocking his view, was nevertheless negligent when he struck the turning vehicle after the van switched lanes leaving defendant faced with a stopped vehicle. The court concluded that Boehm was negligent in failing to keep a proper lookout, following too closely, and driving too fast for existing conditions. The Fontenot court also held that the defense of sudden emergency was not available to a defendant charged with negligence where the emergency was created by a motorist's "lack of lookout, speed, [or]... following a vehicle too closely." Fontenot, supra, citing Blashfield, Automobile Law and Practice, Section 102.28 (revised Third Edition (1979)) (footnotes omitted).
In the instant case the defendant knew that he was traveling on a two-lane highway; that cars stopped frequently to turn into nearby businesses; that he was carrying a loaded trailer; that his vision was impaired by the curve in the road. Nevertheless, he did nothing in anticipation of having to stop for turning vehicles. For these reasons we find that the defendant was negligent in not keeping a proper lookout, driving too fast where his visibility was impaired, and failing to maintain his trailer braking system. Furthermore, we find that the defense of sudden emergency is not applicable under the facts of this case, where the defendant himself was negligent.

QUANTUM
Initially, we address the issue of whether the record contains sufficient evidence *240 for this court to determine the amount of damages to which the plaintiffs are entitled. We find the evidence sufficient even though, for reasons not known to this court, the medical expenses of the plaintiffs were not admitted at trial. The evidence was undeniably available to the plaintiffs at trial and plaintiffs chose not to introduce it. We find no authority for remanding this case for admission of evidence which was available at the time of trial.
The accident occurred on May 17, 1983, near the plaintiffs' home in Covington. The plaintiffs were both 62 years old at the time, and had recently retired and moved to Covington. Prior to the accident they traveled a great deal and enjoyed visiting their children and grandchildren in Thibodaux, Houma, Kenner and LaPlace. This all changed for the plaintiffs after the accident, when they became reclusive and feared driving on two-lane highways and at night. The plaintiffs recalled their trauma of watching the defendant's truck hit them head-on and being totally helpless to do any thing. Mrs. Kolwe remembered fearing their death. Upon impact the plaintiffs were thrown forward, each striking their heads on the windshield. Mr. Kolwe remembered being momentarily stunned and then hearing a ringing noise in one of his ears. They were both treated later that evening at Highland Park Hospital, where x-rays were taken and a cervical collar was prescribed for Mrs. Kolwe. Mrs. Kolwe also complained of a bump on her head that "stayed for a good while."
Mrs. Kolwe described the mental depression and anxiety she experienced following the accident. She developed a fear of driving on two-lane highways and of on-coming vehicles veering from the other lane of traffic into her lane. She ceased driving for a year following the accident and she also described tension and anxiety between her and her husband when they drove.
Mrs. Kolwe's mental depression and anxiety continued during the years following the accident, and upon advice of her attorney both she and her husband began psychiatric treatment under the care of Dr. William A. Bloom. Since seeing Dr. Bloom she feels optimistic about overcoming her problems.
Under cross-examination Mrs. Kolwe admitted having previous medical problems which included headaches, high blood pressure, hypertension, leg cramps and nervousness, for which she took librium as needed, not exceeding 20-30 miligrams a week.
Mr. Kolwe testified that shortly before leaving the Emergency Room the day of the accident he began experiencing tightness in his neck and he later developed hip pain. Mr. Kolwe's medical history included nervousness, tension, insomnia as far back as 1967, hypertension, hyperthroidism, depression, tinnitus (ringing in ears), pain and stiffness in his neck. He stated that the tinnitus in particular had been aggravated by the accident, and that he had never experienced hip trouble prior to the accident. Mr. Kolwe admitted seeking psychiatric treatment for stress and related depression from 1980 through June of 1984. Dr. Holtzman, at Ochsner Clinic, treated Mr. Kolwe through antidepressants and counseling. Dr. Holtzman discharged Mr. Kolwe in June of 1984, with instructions to return if his depression reoccurred.
Shortly after the accident Mr. Kolwe went to an ear doctor concerning the "heavy ringing" in his ear that resulted from hitting his head on the windshield. He was prescribed medication that increased his high blood pressure for which he went to the Emergency Room at Ochsner where he was advised to discontinue the medication.
On June 20, 1983, he saw Dr. McFarland, an Orthopedist, at Ochsner, for his neck problem. He brought along with him his x-rays that had been taken at Highland Park Emergency Room. He was prescribed physical therapy and given a book on care of his neck. The medication he was given caused him some side effects, in particular, a rash on his face, therefore he discontinued the medication and saw a chiropractor.
Carol Kolwe, the daughter-in-law of the plaintiffs, testified that the Kolwes were *241 excited about retiring and moving to Covington to live. Prior to the accident Mr. and Mrs. Kolwe visited their children and grandchildren on a regular basis and traveled a lot. Following the accident they developed a fear of driving, in particular, driving on two-lane roads and driving at night. After the accident they visited their children and grandchildren considerably less, and for shorter periods of time.
Dr. Bloom, a Board certified psychiatrist, was accepted by the Court as an expert in the field of psychiatry. He prepared a medical report dated January 25, 1985, and basically testified with regard to its contents. He diagnosed both Mr. and Mrs. Kolwe as suffering from post-traumatic stress disorder which is corroborated by Mr. Kolwe's medical records of October 25, 1983, stating that he seemed to be having significant post-traumatic anxiety related to a head-on collision with a dump truck. He described this condition as a mental disorder producing disabilities or discomfort. He testified that such a disorder normally results from a "life threatening" situation or experience and produces the following symptoms:
1. It causes ordinary or common symptoms to be distorted and out of proportion to reality;
2. It causes individuals to dream or re-experience the accident or other life threatening experience of situation;
3. It creates anxiety symptoms;
4. It creates a tendency for the individual to withdraw from contact with other persons and show lack of interest; and
5. It causes the individual to avoid situations that recall the previous experience.
Dr. Bloom also stated that pre-existing problems such as tension and nervousness are accentuated by the trauma, and it is difficult, if not impossible, to fake these symptoms, and he recalled that Mr. Kolwe initially reacted through crying spells. He believed that Mr. and Mrs. Kolwe's symptoms were genuine.
Dr. Bloom described the effect of the accident as follows:
It (the accident) changed their lives and they were mad about it and couldn't deal with the anger.... they had shifted the whole focus of their lives from friends and outside interests to their own problems and to going, for one reason or another, to doctors and worrying about the law problems and everything. There had been a shift in focus in their lives from living to the accident, and aftermath of the accident.
When he first saw Mr. and Mrs. Kolwe in June of 1985, Dr. Bloom found their symptoms to be at the highest level. It was his opinion that the accident of May of 1983 was the cause of their post traumatic syndrome symptoms, and that their pre-existing nervous conditions were aggravated by the accident. He believed that the Kolwes' symptoms had improved with treatment that consisted of therapy/counseling sessions and antidepressants for Mr. Kolwe. His charge for treating both Mr. and Mrs. Kolwe totalled $880.00.
The only witness called by the defense on the issue of damages was Dr. William Locke, a Board certified doctor of internal medicine, associated with Ochsner Clinic. He was accepted by the Court as an expert in the fields of internal medicine, endocrinology and metabolics.
He treated both Mr. and Mrs. Kolwe for problems that pre-dated the accident. He treated Mr. Kolwe for nervousness and depression in 1968. With respect to the automobile accident of May of 1983, Mr. Kolwe's first office visit was on June 15, 1983, at which time his chief complaint was pain in the right side of the neck and nervousness. Dr. Locke's record of this visit also indicated that Mr. Kolwe was "doing quite well until a car accident on March [sic] 17th, 1983." He referred Mr. Kolwe to Dr. McFarland with the Orthopedic Department for evaluation and treatment of his neck pain complaint. According to the records of Ochsner Clinic, Mr. Kolwe saw Dr. McFarland only once, on June 20, 1983. He thereafter saw Dr. Locke again on June 28, 1983, and lastly on July 27, 1983.
*242 Dr. Locke testified that he treated Mrs. Kolwe between the year of 1977 and 1982 for hypertension and leg cramps. With respect to the office visit of June 14, 1983, in connection with the motor vehicle accident, she stated that she did not have any significant residual physical symptoms. He last saw her on June 28, 1983. He found her blood pressure to be elevated and he prescribed more active treatment. Mrs. Kolwe did not see Dr. Locke again.
In summary, the foregoing establishes that both Mr. and Mrs. Kolwe sustained soft tissue injuries in the form of cervical strains and contusions to the head. In addition, Mr. Kolwe experienced ringing in his ears, neck pain and hip trouble, for which he sought medical and chiropractic treatment. Mrs. Kolwe experienced no physical residual effects, however, both Mr. and Mrs. Kolwe developed a residual emotional injury diagnosed by Dr. Bloom as post traumatic stress syndrome commencing with the accident and continuing, although with improvement, through the date of the trial of the case, some three years post accident. Incidental to this syndrome, most of Mr. and Mrs. Kolwe's pre-existing conditions, including nervousness, anxiety and depression were significantly aggravated.
There is no dispute that Mr. and Mrs. Kolwe suffered from nervousness and anxiety prior to the accident, however, this does not lessen the tort-feasors responsibility to compensate them for all the consequences of the accident. "A tort-feasor takes the victim as he finds him." Walton v. William Wolf Baking Co., Inc., 406 So.2d 168, 175 (La.1981). Furthermore, damages based on psychological grounds are clearly recognized and compensable under Louisiana law. Id.
Considering the physical and psychological injuries sustained by the plaintiffs, the minimum amount for which Mrs. Kolwe should be compensated in general damages is $15,000.00, and the minimum amount Mr. Kolwe should be compensated in general damages is $20,000.00, together with $880.00 medical expenses as substantiated by the testimony of Dr. Bloom.
For the foregoing reasons the judgment of the trial court is reversed and judgment entered for the plaintiffs, in the total sum of $35,880.00, all costs are to be borne by defendants.
REVERSED AND RENDERED.
NOTES
[*] Judge Remy Chiasson, retired, has been assigned temporarily to this Court by the Supreme Court of Louisiana, to fill the vacancy created by the death of Judge John S. Covington.