536 So.2d 476 (1988)
Earlis J. ADAMS
v.
DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT OF the STATE OF LOUISIANA, et al.
No. 87 CA 1212.
Court of Appeal of Louisiana, First Circuit.
November 22, 1988.
*477 Johnny X. Allemand, Thibodaux, for plaintiff-appellee, Earlis J. Adams, et al.
Philip J. McMahon, Jason Lyons, Houma, for defendants-appellants, Louisiana Dept. of Public Safety and Travelers Ins. Co.
William A. Stark, Weeks & Stark, Houma, for defendant-appellant, State of Louisiana, Dept. of Transp. and Development.
Elizabeth R. Smyth, Hailey, McNamara, Hall, Larmann & Papale, Metairie, for intervenor-appellee, American Mut. Liability Ins. Co.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
SHORTESS, Judge.
Earlis J. Adams was traveling north on Louisiana Highway 308 in Lafourche Parish around noon on December 10, 1981. It was grinding season and Adams was taking a full load of sugarcane from a field below Lockport to a mill in Raceland. He rounded a curve and saw a Louisiana State Police vehicle, lights flashing, traveling near the center line. Adams was traveling approximately 35 miles per hour as he came out of the curve; and as the police vehicle neared, appearing to move closer to the middle of the road, Adams downshifted and attempted to steer his eight-foot wide rig to the far edge of the ten-foot wide northbound lane of Highway 308. Adams' front right wheel went onto the shell shoulder and remained off the paved roadway as the truck traveled approximately 100 feet, *478 crossed an intersecting roadway, hit a "hole" in the shoulder, and flipped onto its side.[1]
Adams was injured. He brought suit against the State of Louisiana, Department of Transportation and Development, and Department of Public Safety (DOTD and DPS, respectively), alleging a cause of action based on LSA-C.C. art. 2317 as to the former and LSA-C.C. art. 2315 as to both. Adams died before trial, and his wife, Winnie LeBlanc Adams, and six children[2] (plaintiffs) were substituted as plaintiffs.
Additionally, American Mutual Liability Insurance Company intervened to recover worker's compensation benefits and medical payments paid as a result of Adams' injuries.[3]
Following a bench trial, the court entered judgment in plaintiffs' favor, against DOTD and DPS in solido.[4] In a well-reasoned opinion the trial court found that Adams was traveling northbound on Highway 308, a two-lane highway, at approximately 35 miles per hour when he encountered a southbound Louisiana State Police vehicle driven by Trooper Charles Giarrusso. The police vehicle was escorting a tractor trailer carrying a 17-foot 6-inch wide load, (a marsh buggy dragline). Giarrusso's red lights were flashing as he proceeded, between 35 and 45 miles per hour, on or near the center line of the highway. The trial court noted that though the testimony varied as to the specifics (whether Giarrusso motioned oncoming vehicles off the road, used the patrol car's loudspeaker, or simply proceeded partially in the opposing lane), Adams was compelled to steer his vehicle to the outer edge of his own lane. His right front tire went onto the shoulder, and he was unable to return to the paved highway.
The trial court, accompanied by counsel for the parties, inspected the accident site and found that the distance between the first curve south and the accident site was .19 miles; that the width of the highway at the time of the accident was 21 feet; and that the hole Adams encountered was within 7 feet of the roadway. The trial court additionally determined that:
Earlis Adams had a distance of .19 miles to react to an oncoming wide load; ... the first one-half of that distance provided no reasonable shoulder for the plaintiff's tractor-trailer to exit onto. The next one-fourth of that distance was a very narrow shoulder with light poles approximately twelve feet from the highway. The only reasonably available area to exit onto was the refinery road.
The trial court also noted that there was sufficient clearance on the west shoulder of Highway 308 for the wide load to move over to allow safe passage for Adams' vehicle.
The court concluded that DOTD breached its duty to maintain Highway 308 and adjoining shoulders and that the hole in the shoulder constituted an unreasonably dangerous condition, finding liability on the part of DOTD under both LSA-C.C. art. 2315 and 2317.
The court determined that DPS was negligent for forcing Adams' fully loaded cane truck onto the shoulder:
Trooper Giarrusso knew or should have known that the fully loaded tractor-trailer rig driven by Mr. Adams could not negotiate the narrow shoulder on Highway 308 and that Trooper Giarrusso should have taken evasive action himself to provide room for both the wide load and the tractor-trailer being driven by the plaintiff. The Court established that *479 the roadway at the time of the accident was twenty one (21) feet wide. The deposition of Earlis Adams states that his trailer was forty four feet (44) long and eight feet (8) wide. (deposition, Earlis Adams p. 16) The testimony of the truck driver, Donald Oubre, showed that the wide load he was driving measured seventeen (17) feet six (6) inches wide and was traveling between 30-40 mph. Common sense dictates that with a [b]ayou on the west side of the highway and a narrow shoulder on the east side, that the Trooper should have exercised a great deal more caution in proceeding through this area of Highway 308. Clearly there was no way that both vehicles could have remained on the highway when they passed each other.
DOTD, DPS, and Travelers have appealed, assigning error in the trial court's finding of no fault on Adams' part and in the assessment of general damages and loss of wages. DOTD assigned additional error in the trial court's finding of LSA-C.C. art. 2317 liability.[5] DPS assigned additional error in the trial court's finding of liability under LSA-C.C. art. 2315 and in its failure to apportion fault.
ADAMS' FAULT
Adams testified in his deposition that he was compelled by Trooper Giarrusso to accommodate an intrusion into his lane of travel. Other disinterested witnesses testified similarly. Adams acted not only reasonably but in accordance with law. See LSA-R.S. 32:56 (providing that "[n]o person shall fail or refuse to comply with any lawful order or direction of any police officer ...")." The trial court was not clearly wrong in finding Adams guilty of no fault.
NEGLIGENCE OF DPS
The trial court determined that Trooper Giarrusso had a duty not only to the vehicle he was escorting but to all motorists. We agree. The protection of the public is one of the reasons that vehicles carrying permit loads are required to have a police escort. See LSA-R.S. 32:387(B)(2) and (3); see also Lowe v. Patterson, 492 So.2d 110, 112 (La.App. 1st Cir.), writ denied, 496 So.2d 355 (La.1986).
In Lowe v. Patterson, this court determined that the duty of a police officer is always to the general public. We discussed the distinction between a special duty to an individual and the general duty to the public, and recognized that the general duty exists always and that a special duty, if existent, is concurrent. 492 So.2d at 112-113. Trooper Giarrusso's duty to Adams was no different than that to any other motorist on Highway 308. What was required to fulfill that duty, however, was made different by the size of Adams' vehicle and the precarious nature of his load.[6] It should have been obvious that a fully loaded cane truck could not have easily negotiated a shell shoulder. Giarrusso knew or should have known that his permit load was 17 feet 6 inches wide. He knew or should have known that the approximate width of the paved roadway was no more than three feet wider than the vehicle he was escorting. He knew or should have known that the approaching cane truck was much wider than the three extra feet of roadway.
The trial court determined that there was a widened portion of shoulder prior to the intersection with the private road (the accident site) that could have accommodated the wide load while Adams passed safely. We are not prepared to say that a wide load must always move to the shoulder. We do say that a police escort must proceed with caution and concern for every vehicle on the highway. Giarrusso could easily have slowed his vehicle as well as the wide load and allowed Adams more time to relinquish the northbound lane.[7] *480 Simple mathematics indicate that the wide load and the cane truck could not have passed on Highway 308 without one or both vehicles using the shoulder. There is no reason to believe the vehicles could not have safely passed had the maneuver been approached with caution. Instead, Trooper Giarrusso used his authority with unilateral concern and the vehicles did not safely pass. The trial court was not clearly wrong in finding fault on the part of DPS.
LIABILITY OF DOTD
DOTD assigns error in the trial court's finding strict liability for the condition of the shoulder. Liability under LSA-C.C. art. 2317 is a consequence of custody of an unreasonably dangerous thing which causes injury. Jones v. City of Baton Rouge, 388 So.2d 737 (La.1980). The state is responsible for the maintenance of its highways, including the adjoining shoulders. Bethea v. Louisiana Department of Transportation and Development, 415 So. 2d 535 (La.App. 1st Cir.1982). The testimony indicated that the hole Adams drove through was several feet from the paved roadway but was in the shell portion and was repaired by DOTD shortly after the accident. The testimony varies as to the exact size of the hole (most witnesses estimated that it was 8 to 10 inches deep) but is consistent that it was large enough to engulf a truck tire and that Adams drove through the hole before his truck flipped.[8] Expert testimony indicated that the truck would not have flipped had it not been for the hole. The trial court determined that the hole constituted an unreasonably dangerous condition which caused the truck to turn over. We are unable to find manifest error in this determination.
CONTRIBUTION
The trial court determined that apportionment of fault between DPS and DOTD was not appropriate inasmuch as neither sought to enforce contribution pursuant to LSA-C.C. art. 1805 and LSA-C.C. P. arts. 1111 through 1116.[9] We agree. Comment (b) of LSA-C.C. art. 1805 provides that a party seeking to enforce contribution must follow Articles 1111 through 1116 of the Code of Civil Procedure.[10] Neither co-defendant pled contribution, thus apportionment of fault was not an actual controversy between interested parties properly before the trial court. See Couvillion v. Smiley, 251 La. 279, 204 So.2d 286, 287 (1967).
QUANTUM
Both DOTD and DPS assign error in the award of $125,000.00 in general damages.
Adams was injured on December 10, 1981, and died on April 18, 1986. His wife testified that Adams was in continuous pain and required medication all the time; that he never returned to work (driving and maintaining his truck); and that he was unable to sleep at night.
Dr. Philip Robichaux, Adams' general practitioner, testified that Adams had osteoarthritic problems with his knees, but Robichaux testified that these problems were not debilitating, and that, in his opinion, the accident aggravated Adams' pre-existing condition. A tort-feasor must accept the consequences of his tort, even if the damages are greater because of the aggravation of a pre-existing condition. Miller v. Great Atlantic & Pacific Tea Co., 510 So.2d 695, 697 (La.App. 1st Cir.), writ denied, 513 So.2d 1213 (1987). Dr. Stephen B. Morris, an orthopedic surgeon who treated Adams prior to and after the December 10, 1981, accident, testified that degenerative changes had occurred in both Adams' knees; that on February 13, 1981, Adams was given a steroid injection to one of his knees (which knee was not specified); and that on June 18, 1981, he was given another injection, this time, specifically, to his right knee.
*481 Adams' left knee was injured in the accident. Thereafter, Adams complained of severe pain in his left knee. An arthroscopic examination performed four months after the accident showed severe degenerative joint disease and a frayed lateral meniscus. X-rays taken a month later revealed more severe changes in the left knee than in the right. Morris suggested that Adams consider knee replacement surgery but Adams refused.
Eight months after the accident Adams submitted to total knee replacement surgery. He was hospitalized for seventeen days. Following the knee replacement, physical therapy was prescribed in order to improve the knee's range of motion. For nine months following the surgery, Adams made regular trips to doctors, remained medicated as before, and experienced slow improvement in the flexion range in his left knee. He was discharged by Dr. Morris as having reached maximum orthopedic benefit on May 6, 1983. Morris testified that Adams was not pain free at that time. In view of the foregoing, we do not find that the trial court abused its discretion in assessing general damages at $125,000.00.
Lastly, DPS and DOTD assign error in the trial court's award of $53,103.00 in lost wages. This figure was stipulated to as representing the wages of a man hired to drive Adams' truck from the time of his accident until his death. Defendants argue that Orgeron v. Louisiana Coca-Cola Bottling Co., 411 So.2d 539 (La.App. 1st Cir. 1982), requires reversal of this award. In Orgeron we reversed an award for economic loss based on the plaintiff's contention that his injury necessitated the hiring of two men to perform the work he had previously done. We determined that plaintiff failed to prove that two men were required to replace him. The facts at bar are inapposite. Plaintiffs showed that prior to the accident Adams had driven and maintained his truck and that he was unable to do so afterward. He incorporated his business several months later and hired a driver. Adams' son testified that he had performed the maintenance work on the truck that his father was no longer able to do. While there is some evidence that Adams' business improved following the incorporation, the trial court believed Adams would have been driving that truck had he not been disabled and that the wages paid to the replacement driver were a fair measure of the wages he would have earned. We cannot say that this determination is clearly wrong.
For the foregoing reasons, the judgment of the trial court is affirmed, and costs of this appeal are assessed against DOTD and DPS in the amount of $780.00.
AFFIRMED.
NOTES
[1] The intersecting roadway was private. It was owned by and led to the Georgia Sugar (formerly South Coast) Refinery. There was much testimony at trial that the hole in the shoulder was caused by truck traffic from the private road turning north on Highway 308.
[2] Wylene Adams Talbot, Dale Adams Denson, Earlis J. Adams, Jr., Chris Adams, Mary Lynn Adams, and Andrea Adams Chase.
[3] All parties stipulated to the amounts of compensation benefits ($37,462.71) and medical benefits ($16,363.00) to which American Mutual would be entitled in the event of judgment in plaintiffs' favor.
[4] Travelers Insurance Company, DPS's insurer, was a co-defendant and was adjudged liable, in solido, with DPS and DOTD.
[5] It is noted that there is no assignment of error with regard to liability assessed against DOTD under LSA-C.C. art. 2315.
[6] Giarrusso testified that he saw the vehicle approaching and noticed the sugarcane "very high out over the sides of the truck itself."
[7] Giarrusso and the driver of the wide load were able to communicate by radio.
[8] The witnesses consistently describe the truck as rocking or bouncing immediately prior to turning over.
[9] LSA-CC. art. 1805 was in effect in 1986 when the matter was tried. LSA-C.C. art. 2103 (1870) was its predecessor, in effect at the time the suit was filed, and did not substantially differ.
[10] This language existed in the text of LSA-C.C. art. 2103 (1870).