577 So.2d 112 (1991)
Houston MACK, et al.
v.
TRANSPORT INSURANCE COMPANY, et al.
HARTFORD ACCIDENT & INDEMNITY COMPANY and Charlet Funeral Home, Inc.
v.
FERRELL TRUCKING, Lonnie Ferrell, and/or Transport Insurance Company.
Nos. CA 89 1201, CA 89 1202.
Court of Appeal of Louisiana, First Circuit.
March 5, 1991.
*113 W. Lee Overton, Saundra P. Overton, for James A. Johnson, et al.
Ben Lightfoot, Calvin Hardin, Jr., Baton Rouge, for Transport Ins. Co. and Ferrell Trucking.
Andrew A. Lemeshewsky, New Orleans, for Hartford Acc. & Indem. Co.
Before SAVOIE, FOIL and GONZALES, JJ.
GONZALES, Judge.
This case arises out of a motor vehicle accident which occurred on July 12, 1985, in East Feliciana Parish. The collision involved a vehicle driven by Houston Mack[1] in which James Alex Johnson was a passenger, and a vehicle driven by Lonnie Ferrell. At the time of the accident, Mr. Mack and Mr. Johnson were in the course and scope of their employment with Charlet Funeral Home. As a result of the accident, Hartford Accident and Indemnity Company *114 (hereinafter "Hartford"), as the worker's compensation insurer of Charlet Funeral Home, made certain expenditures to and on behalf of Mr. Johnson.
Suit was filed by Mr. Johnson against Lonnie Ferrell and his insurer, Transport Insurance Company, seeking recovery for damages sustained in the accident; Mrs. Johnson also joined in the petition seeking recovery for loss of consortium. A separate suit was filed by Hartford and Charlet Funeral Home against Lonnie Ferrell and Transport Insurance Company seeking reimbursement for worker's compensation benefits and medical bills paid to and on behalf of Mr. Johnson. These two cases were consolidated for trial, the former being tried by jury and the latter by the judge. The jury found plaintiff had suffered damages in the following amounts:

Past medical expenses $ 40,000.00
Future medical expenses 3,500.00
Past lost wages 33,284.00[2]
Future lost wages 150,000.00
Past physical pain and suffering 50,000.00
Future physical pain and suffering 10,000.00
Past mental anguish and distress 5,000.00
Future mental anguish and distress 1,000.00
Permanent disability 50,000.00
 ___________
 TOTAL: $342,784.00

Pursuant to the jury verdict and considering a stipulation by the parties,[3] judgment was rendered in favor of plaintiff and against Lonnie Ferrell and Transport Insurance Company in the amount of $281,425.53. Additionally, Mr. Johnson was awarded $3,004.82, representing accrued interest on $61,358.47. Mrs. Johnson was awarded $30,000.00 for loss of consortium. Hartford was awarded $61,358.47.[4] The judgment further recognized Hartford's entitlement to a credit of $3,500.00 toward future medical expenses and to a release from liability for future lost wages, upon payment by defendants of those sums.
Lonnie Ferrell and Transport Insurance Company, appeal and make the following assignments of error:
1) The court erred in allowing the jury to be told the limits of insurance coverage afforded by Transport Insurance Company to Lonnie Ferrell and allowing reference to these limits to be made by plaintiff in both the opening and closing statements.
2) The court erred in failing to submit a verdict form to the jury which would determine whether or not the driver of the garbage truck was guilty of any degree of negligence.
3) Alternatively, if it was necessary to specifically plead the liability of a joint tortfeasor in order to have a determination of fault of a non-party and the percentage of such fault, the court erred in refusing to allow the petition to be amended.
4) The court erred in excluding evidence concerning the question of whether or not the garbage truck in question signaled to indicate its intention to make a left turn, whether or not any brake lights were operating on said garbage truck, and whether or not the garbage truck left the scene of the accident shortly after the incident and returned sometime later.
5) Alternatively, the defendants should have been allowed to amend their answer to include the allegations that there were no stop lights on the truck and/or that no left turn signal was given by the driver of the garbage truck.
6) The court erred in failing to give proposed special instructions numbers three and five submitted by defendants.
7) The award made to Mrs. Johnson for loss of consortium is excessive.
8) The total award of $342,784.00 made to Mr. Johnson was excessive.
9) The court erred in the award of expert witness fees.
*115 Plaintiffs, Mr. and Mrs. Johnson, also appealed from the judgment of the trial court, alleging these assignments of error:
1) The award made for future lost wages was inadequate.
2) The award made for future medical expenses was inadequate.
3) The general award as to past, present and future pain and suffering, mental anguish and distress and permanent disability was inadequate.

FACTS
The accident in question occurred July 12, 1985 on Louisiana Highway 19 in East Feliciana Parish. Highway 19, in the area of the accident, is a north/south rural highway approximately twenty-six feet in width and with a posted speed limit of 55 M.P.H., at the time of the accident. At approximately 11:30 a.m., on the date of the accident, Lonnie Ferrell was driving a 1980 Mack truck and trailer (an "eighteen-wheeler"), loaded with wood chips, in a southerly direction on Highway 19. Houston Mack was driving a 1982 Ford F-350 flatbed truck, loaded with funeral flowers and equipment, in a northerly direction on Highway 19. Plaintiff, James Alex Johnson, was a passenger in the vehicle driven by Mr. Mack. According to Mr. Johnson, he had his feet propped up on the dashboard and was dozing at the time of the accident.
At the same time, a garbage truck owned by the town of Jackson, Louisiana, occupied by Clarence Webb, the driver, and Melvin Green, was proceeding in a southerly direction on Highway 19, ahead of Lonnie Ferrell. The garbage truck came to a stop at the intersection of Highway 19 and Carruth Road, waiting to make a left turn onto Carruth Road. Coming upon the stopped garbage truck, Mr. Ferrell found that he could not bring his truck to a safe stop. He initially pulled the truck to the right towards the ditch on that side of the road; however, on seeing a northbound vehicle pass by, Mr. Ferrell decided to pull his vehicle into the oncoming lane of traffic, failing to see the oncoming truck in which plaintiff was a passenger. The vehicle driven by Mr. Mack and that driven by Mr. Ferrell collided.

DISCLOSURE OF POLICY LIMITS
The insurance policy of Transport Insurance Company insuring Lonnie Ferrell for one million dollars was introduced into evidence without testimony, and over defendants' objection. Additionally, the following remarks were made by plaintiffs' counsel during opening and closing arguments:
[OPENING:]
In addition to that evidence that we told you about we will further introduce into evidence that Mr. Lonnie Ferrell is insured by Transport Insurance Company. That that insurance company has insured him in the amount of $1,000,000.00 for any liability that he may have occasioned to some other person. That that policy was in effect at the time of this accident and insured him for any negligent actions that he might make to pay it.
* * * * * *
[CLOSING:]
Ladies and Gentlemen, as a result of your verdict here today no one is going to jail. You're not going to cause any real damage to anybody, we hope.
* * * * * *
In reference to this, if you award them $965,000.00 as I've explained it to you, Lonnie Ferrell pays $50.00 and the cost of Court on September the 9th, 1985, Transport Insurance Company pays $965,000.00 because they have a contract of insurance, introduced into evidence, in the amount of $1,000,000.00 to insure against his negligent acts, its a contract.[5]
The court then allowed defendants' counsel to make the following remarks in his closing argument:

*116 $1,000,000.00, he made a statement about Mr. Ferrell paid $50.00, and, where, there wasn't any real damage done to anybody here. [Sic.] Do you think Mr. Overton wants you to treat this insurance company just as fair as anybody else. Don't you think he wants you to treat them a little differently. That's for you to decide. The amount he's asking for is almost the policy limits. If it was a $2,000,000.00 it would be $2,000,00.00. That's for you to consider.
Louisiana Code of Evidence, article 411, provides, "Although a policy of insurance may be admissible, the amount of coverage under the policy shall not be communicated to the jury unless the amount of coverage is a disputed issue which the jury will decide." While the Code of Evidence did not become applicable to court proceedings until its effective date, January 1, 1989, the Comments to article 411 reveal the legislative purpose for its enactment: "This Article is intended to clarify Louisiana law...."
Prior jurisprudence on this issue was indeed unsettled. The position of this court was stated in Case v. Arrow Trucking Company, 372 So.2d 670, 677 (La.App. 1st Cir.), writ denied, 375 So.2d 944 (La.1979), as follows:
In Ashley v. Nissan Motor Corp. in U.S.A., 321 So.2d 868 (La.App. 1st Cir. 1975), the majority of a three judge panel of this court held that it was proper to withhold from a jury knowledge of the policy limits of an insurer made defendant in an action for damages. The Supreme Court denied writs in Ashley, supra, but in so doing noted, at 323 So.2d 478 (1975):
"... Although we do not approve that portion of the opinion which permitted the policy limits to be withheld from the trial jury, we cannot say that under the facts the result is incorrect."
In Domingue v. Continental Insurance Company, 348 So.2d 209 (La.App. 3rd Cir.1977), our brothers of the Third Circuit held the foregoing language in Ashley, supra, to be a clear pronouncement by the Supreme Court that, prior jurisprudence to the contrary notwithstanding, the ability of a defendant to pay as evidenced by insurance coverage, is a matter which may be properly placed before the trial jury.
We view the language in like manner and consider it to have overruled our holding in Ashley, above, and the authorities therein relied upon. Accordingly, we find no error in the admission of such evidence.
However, a subsequent decision of our supreme court calls into doubt the position taken in Case as indicated by the Second Circuit in Jones v. Lingenfelder, 537 So.2d 1275, 1279 (La.App. 2d Cir.), writ denied, 539 So.2d 631 (La.1989):
Subsequently, the Supreme Court held in Rodriguez v. Traylor, 468 So.2d 1186 (La.1985), that "... the wealth or poverty of a party to a lawsuit is not a proper consideration in the determination of compensatory damages. Each litigant should stand equal in the eyes of the law regardless of his financial standing." 468 So.2d 1188. In Rodriguez the Supreme Court overruled the long-standing jurisprudential rule that one may offer one's inability to pay a judgment as a defense. Prior to Rodriguez if the defendant presented his inability to pay as a defense then the plaintiff was allowed to present the limits of any liability insurance policy. Suhor v. Gusse, 388 So.2d 755 (La.1980).

Rodriguez did not involve disclosure of insurance policy limits to a jury, but it can be argued that if neither the wealth nor poverty of a party is a proper consideration in determining compensatory damages, evidence of the amount or limits of insurance coverage is not relevant or material and should not be presented to the jury.
* * * * * *
This court has apparently not previously addressed this issue. We now hold, based on the Rodriguez rationale and consistent with the clarifying rule adopted in the new Code of Evidence, that the trial court's refusal to allow the jury to know the limits of the liability *117 insurance policy was not error. The defendant's wealth or poverty should not be a consideration when determining the proper award of damages for injuries the plaintiff has sustained.
Likewise, this circuit has not previously addressed the effect of the Rodriguez decision on prior jurisprudence. We choose to adopt the reasoning of the Second Circuit on this issue, and hold that the limits of a liability insurance policy are not properly admissible for the purpose of establishing a party's ability to pay.
Thus, in the case sub judice, the introduction and references to the policy limits were erroneously allowed. However, as we find the trial court judgment to be otherwise correct[6], we believe defendants have suffered no prejudice,[7] particularly in light of the fact that the jury award of $342,784.00 fell well below the policy limits of one million dollars. See Miller v. Atlantic Richfield Company, 499 So.2d 1095 (La.App. 3d Cir.), writ denied, 501 So.2d 198 (La.1986); Ponder v. Groendyke Transport, Inc., 454 So.2d 823 (La.App. 3d Cir.), writs denied, 457 So.2d 1195, 1198 (La.1984). Therefore, we find no merit in this assignment of error.

ADMISSIBILITY OF EVIDENCE OF THIRD PARTY NEGLIGENCE
Defendants argue in assignments of error 2 and 3 that the jury should have been allowed to determine the percentage of fault, if any, attributable to the garbage truck driver, alternatively, contending amendment to their answer should have been allowed to raise the issue. In support of their position, defendants cite La.C.C.P. art. 1812 which, in pertinent part, reads as follows:
C. In cases to recover damages for injury, death, or loss, the court may submit to the jury special written questions inquiring as to:
(1) Whether a party from whom damages are claimed, or the person for whom such party is legally responsible, was at fault, and, if so:
(a) Whether such fault was a legal cause of the damages, and, if so:
(b) The degree of such fault, expressed in percentage.
(2) If appropriate, whether another person, whether party or not, other than the person suffering injury, death, or loss, was at fault, and, if so:
(a) Whether such fault was a legal cause of the damages, and, if so:
(b) The degree of such fault, expressed in percentage.
(3) If appropriate, whether there was negligence attributable to any party claiming damages, and, if so:
(a) Whether such negligence was a legal cause of the damages, and, if so:
(b) The degree of such negligence, expressed in percentage.
(4) The total amount of damages sustained as a result of the injury, death, or loss, expressed in dollars.
[Emphasis added.]
The record reveals that the garbage truck driver was not named as a defendant, nor did defendants/appellants seek contribution from him by means of a third party demand. Therefore, the garbage truck driver was not a party to these proceedings. Since contribution was not pled, apportionment of fault was not an actual *118 controversy between interested parties properly before the trial court. Adams v. Department of Transportation and Development of the State of Louisiana, 536 So.2d 476 (La.App. 1st Cir.1988). See also Couvillion v. Smiley, 251 La. 279, 204 So.2d 286 (1967). Because the provisions of La.C.C. art. 2324[8] in effect prior to its amendment in 1987 apply to the case sub judice, Lonnie Ferrell would be liable in solido with any other tortfeasor so that 100% of the damages are collectible against him alone. See La.C.C. art. 1795, and Morrison v. J.A. Jones Construction Co., 537 So.2d 360 (La.App. 4th Cir.1988). See also Jones v. Progressive American Insurance Co., 505 So.2d 156 (La.App. 4th Cir.1987). Thus, in the absence of a demand of contribution, under the old law, any percentage of fault attributable to a third party is immaterial. Consequently, assignments of error 2 and 3 are without merit.
Since the actions of the garbage truck driver are not admissible in order to have a percentage of fault assigned therefor, the only remaining relevance would be to show that Lonnie Ferrell should be exculpated under the sudden emergency doctrine. However, the defense of sudden emergency is not available to relieve a defendant charged with negligence where the emergency was created by a motorist's lack of lookout, speed or following a vehicle too closely. Kolwe v. Taylor, 517 So.2d 236 (La.App. 1st Cir.1987); Fontenot v. Boehm, 512 So.2d 1192 (La.App. 1st Cir. 1987). The law provides that every motorist has a duty to keep his vehicle under control and to maintain a proper lookout for hazards which by the use of ordinary care and observation he should be able to see in time to avoid them. 517 So.2d at 239. Vehicles which have stopped in order to turn are a common hazard on two-lane highways. Id.
A consulting engineer, Mr. Gene B. Moody, called as an expert at the trial below, testified that the garbage truck could be seen in Mr. Ferrell's lane of travel up to 575 feet away. Professor Andrew J. McPhate was called as an expert in accident reconstruction and testified the garbage truck was visible from more than 600 feet. Professor McPhate further testified defendant's truck could have stopped in less than 250 feet. Lonnie Ferrell testified that he had been traveling that particular stretch of highway for about a year, two to *119 three times per day, and was very familiar with the road. He testified that when he first saw the garbage truck, he could have stopped his vehicle had he realized it was stopped.
We believe Mr. Ferrell had a duty to determine whether the vehicle he was approaching was moving or stationary, and his failure to do so was negligent. Thus we find the sudden emergency doctrine inapplicable to this case as the emergency was of defendant's own making.
Even had defendants been allowed to introduce evidence which established a lack of turn signal or brake light on the garbage truck, such evidence would not have been sufficient to exculpate Lonnie Ferrell from all liability. A jury finding assigning zero liability to Mr. Ferrell would have been manifestly erroneous. Any other percentage of liability as to Mr. Ferrell would render him liable for the whole of plaintiff's damages under prior law as discussed hereinabove. Accordingly, we find no merit in assignments of error 4, 5 and 6.

QUANTUM
Defendants contend both the award for loss of consortium to Mrs. Johnson and the total amount of damages awarded to Mr. Johnson were excessive. Mr. Johnson in his answer to the appeal seeks an increase in future lost wages, future medical expenses, and general damages. Upon careful review of the particular facts and circumstances of this case, we are unable to say the trial court abused its discretion in the award of damages. See Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).

COSTS
Defendant argues that expert witness fees were improperly awarded by the trial court because "surely some of the expert witness fees taxed by the Court in this matter must have been based on services performed away from the Court's hearing an observation." Defendants contend La.R.S. 13:3666 requires a contradictory hearing in such an instance. However, this Court has previously held that the amount of expert witness fees may be fixed based upon testimony adduced at the trial of the cause without the necessity of a contradictory rule. Bordelon v. Vulcan Materials Co., 454 So.2d 168 (La.App. 1st Cir.1984), amended, 472 So.2d 5 (La.1985); Hebert v. Broussard, 450 So.2d 1038 (La. App. 1st Cir.1984). Factors to be considered by the trial judge in setting an expert witness fee include: time spent testifying, time spent in preparatory work for trial, time spent away from regular duties while waiting to testify, the extent and nature of the work performed, and the knowledge, attainments and skill of the expert. Succession of Moody, 306 So.2d 869 (La.App. 1st Cir.1974), writ denied, 310 So.2d 639 (La.1975). See also Recreation and Park Commission of East Baton Rouge Parish v. Perkins, 231 La. 869, 93 So.2d 198 (1957). Additional considerations include helpfulness of the expert's report and testimony to the trial court, the amount in controversy, the complexity of the problem addressed by the expert and awards to experts in similar cases. Missouri Pacific Railroad Co. v. Nicholson, 460 So.2d 615 (La.App. 1st Cir.1984), writs denied, 462 So.2d 185, 186 (La.1985). Most importantly, expert witnesses are entitled only to reasonable compensation. Id.
We find the testimony of Doctors Jackson, Clayton, Cenac and vocational consultant, Stephanie Chalfin, at the trial below, provided sufficient information for the trial court to have arrived at an appropriate compensation based on the criteria set forth herein, and cannot say the court abused its discretion in these awards. However, the awards to Mr. Moody, Professor McPhate, and Professor Randy Rice in the amount of $1,759.52, $1,365.00, and $1,120.00, respectively, are excessive considering the minimal evidence of record as to the extent and value of time spent in preparation for trial. Therefore, we reduce those awards to $500.00 each, and amend the judgment accordingly.

FRIVOLOUS APPEAL
Plaintiffs assert entitlement to damages for frivolous appeal under La.C.C.P. *120 art. 2164. This statute is penal in nature and must be strictly construed. Seago, Patrick, Carmichael & Miller v. State Farm Mutual Automobile Insurance Co., 521 So.2d 674 (La.App. 1st Cir.1988); Fernon v. Jordan, 472 So.2d 247 (La.App. 1st Cir.1985); Salmon v. Hodges, 398 So.2d 548 (La.App. 1st Cir.1979). Further, appeals are favored and penalties for frivolous appeal will not be imposed unless they are clearly due. Fisk v. Mathews, 525 So.2d 223 (La.App. 1st Cir.1988); American Supply Co. v. Tara Alyene, Inc., 470 So.2d 459 (La.App. 1st Cir.1985). Even when an appeal lacks serious merit, damages for frivolous appeal will not be made unless it is clear that the appeal was taken solely for the purpose of delay or that appellant's counsel is not serious in the position he advocates. 525 So.2d at 227. Although we find the arguments of this appeal to be without merit, several legitimate issues were raised; therefore, damages for frivolous appeal should not be awarded.
For the reasons assigned, the judgment of the trial court is affirmed, with all costs of this appeal to be borne by appellants, herein.
AFFIRMED AS AMENDED.
NOTES
[1] Mr. Mack was originally named as a plaintiff along with Mr. and Mrs. Johnson however his claims were settled prior to trial.
[2] Although the jury's verdict as read into the trial record and as answered on the Jury Interrogatories awarded $33,284.00 for past lost wages, the judgment listed the amount of $33,384.00; however, the total amount of the award of $342,784.00 reflected that the $33,284.00 figure was used in the calculation.
[3] The parties stipulated that Hartford had paid, prior to trial, to and on account of Mr. Johnson the following amounts:

Worker's compensation benefits $21,376.35
Medical expenses 39,982.12
 _________
 TOTAL: $61,358.47

[4] Interest was awarded on these amounts.
[5] Following this last statement, the trial judge did admonish plaintiffs' counsel as follows:

Also Mr. Overton, if you'll recall when I told you I was going to allow you to uh introduce evidence about the amount of insurance I also said I would not allow it to be argued to the jury. So lets not argue it.
[6] Furthermore, prior to deliberations the trial judge instructed the jury as follows:

What the community expects of you and what I expect of you is the same thing that you would expect if you were a party to this suit. An impartial deliberation and conclusion based upon all evidence presented and on nothing else. This means that you must deliberate on this case without regard to sympathy, prejudice or passion for or against any party in the suit. This means that the case should be considered and decided as an action between persons of equal standing in the community. A corporation or insurance company is entitled to the same fair trial at your hands as a private individual. All persons stand equal before the law and are to be dealt with as equals in our Courts.
[7] We note that a similar error occurring in a case heard after the effective date of the Code of Evidence, January 1, 1989, would be governed under the "substantial rights" test set forth in La.C.E. art. 103, possibly compelling a per se reversal.
[8] Currently, La.C.C. art. 2324 provides as follows:

A. He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.
B. If liability is not solidary pursuant to Paragraph A, or as otherwise provided by law, then liability for damages caused by two or more persons shall be solidary only to the extent necessary for the person suffering injury, death, or loss to recover fifty percent of his recoverable damages; however, when the amount of recovery has been reduced in accordance with the preceding Article, a judgment debtor shall not be liable for more than the degree of his fault to a judgment creditor to whom a greater degree of fault has been attributed. Under the provisions of this Article, all parties shall enjoy their respective rights of indemnity and contribution. Except as described in Paragraph A of this Article, or as otherwise provided by law, and hereinabove, the liability for damages caused by two or more persons shall be a joint, divisible obligation, and a joint tortfeasor shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, or immunity by statute or otherwise.
C. Interruption of prescription against one joint tortfeasor, whether the obligation is considered joint and divisible or solidary, is effective against all joint tortfeasors. Nothing in this Subsection shall be construed to affect in any manner the application of the provisions of R.S. 40:1299.41(G).
Prior to its amendment by Acts 1987, No. 373, Section 1, La.C.C. art. 2324 provided as follows:
He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act.
Persons whose concurring fault has caused injury, death or loss to another are also answerable, in solido; provided, however, when the amount of recovery has been reduced in accordance with the preceding article, a judgment debtor shall not be liable for more than the degree of his fault to a judgment creditor to whom a greater degree of negligence has been attributed, reserving to all parties their respective rights of indemnity and contribution.