607 So.2d 844 (1992)
Ezra N. ALBIN
v.
ILLINOIS CENTRAL GULF RAILROAD COMPANY, et al.
No. CA 92 1040.
Court of Appeal of Louisiana, First Circuit.
October 16, 1992.
*845 Charles W. Rea, Baton Rouge, for plaintiff/appellee.
Gerald Talbot, New Orleans, for defendant/appellant.
Before WATKINS, CRAIN and GONZALES, JJ.
GONZALES, Judge.
This is an appeal of expert witness fees which were taxed as costs against the defendant, Illinois Central Gulf Railroad Company. Defendant's assignments of error are as follows:
1) The taxing of $53,764.13 as costs for expert fees to Warren Ber is manifestly erroneous and should be reduced.
2) The taxing of $8,250 as costs for expert fees to Dr. James Richardson is manifestly erroneous and should be reduced.
3) The taxing of $5,250 as costs for expert fees to Oren Russell is manifestly erroneous and no award should be allowed, or alternatively, the award should be reduced.
4) The taxing of $1,409.70 as costs for expert fees to Michael Hining is manifestly erroneous and should be reduced.
5) The taxing of $761 as costs for expert fees to Wallace Kitchens is manifestly erroneous and no award should be allowed, or alternatively, the award should be reduced.
6) The taxing of $400 as costs for expert fees to Richard Fergus is manifestly erroneous and should be reduced.
Generally, the amount and fixing of expert witness fees lies within the sound discretion of the trial court and will not be disturbed in the absence of an abuse of discretion. Young v. State Farm Fire & Casualty Insurance Company, 426 So.2d 636, 645 (La.App. 1st Cir.1982), writs denied 433 So.2d 148, 171 (La.1983). Factors to be considered by the trial judge in setting an expert witness fee include time spent testifying, time spent in preparatory work for trial, time spent away from regular duties while waiting to testify, the extent and nature of the work performed, and the knowledge, attainments and skill of the expert. Mack v. Transport Insurance Company, 577 So.2d 112, 119 (La.App. 1st Cir.1991); Succession of Moody, 306 So.2d 869, 877 (La.App. 1st Cir.1974), writ denied, 310 So.2d 639 (La.1975). Additional considerations include helpfulness of the expert's report and testimony to the trial *846 court, the amount in controversy, the complexity of the problem addressed by the expert and awards to experts in similar cases. Most importantly, expert witnesses are entitled only to reasonable compensation. Mack v. Transport Insurance Company, 577 So.2d 112, 119; Missouri Pacific Railroad Co. v. Nicholson, 460 So.2d 615, 629 (La.App. 1st Cir.1984), writs denied, 462 So.2d 185, 186 (La.1985). The amount agreed upon between an expert witness and the party calling him is not the criterion to be used by the court in assessing expert fees. State Through Department of Highways v. Smith, 270 So.2d 178, 184 (La.App. 1st Cir.1972), writ denied 272 So.2d 379 (La.1973). The defendant can have taxed as costs the reasonable cost of time spent by the expert in gathering facts necessary for his testimony but not for time spent in consultation which only assists the attorney in preparation for the litigation. State Through Department Of Highways v. United Pentecostal Church of Hodge, 313 So.2d 886, 894 (La.App.2d Cir.), writ denied, 318 So.2d 60 (La.1975); cert. denied, 423 U.S. 1018, 96 S.Ct. 453, 46 L.Ed.2d 389 (1975).

ASSIGNMENT OF ERROR NO. 1
Expert witness fees awarded in this case totaled $69,834.83. The trial court found in its judgment "[N]one of the expert testimony presented by either the plaintiff or defendant was useful to the Court in determining an appropriate measure of damages for loss of business." Nevertheless, Warren Ber, plaintiff's expert CPA, was awarded $53,764.13 in fees which were taxed as court costs. Mr. Ber's records submitted to the court reflect that he spent sixteen hours at the trial. He worked with plaintiff's counsel as an aid in handling witnesses that were presented at trial by both parties.
At the close of trial of the case, the court stated:
All right, let me say this; Iquite frankly, what the experts have attempted to do in this case, is something that was probably impossible, or nearly impossible to do, considering the status of the record-keeping by the Albins, and that's certainly no criticism, this is a mom and pop operation, and in large measure, was done on a cash basis, and records were very much incomplete.
I intend to consider a primary piece of evidence on behalf of the plaintiffs, the income tax returns which were in fact, filed, made under oath to the Internal Revenue Service, which have not been amended. Now, if those returns are in fact inaccurate, he who lives by the inaccurate return, must die by an inaccurate return, and that's gonna be my primary consideration in this case, are the income tax records submitted to the Internal Revenue Service at this point.
I don't mean to tell you that you have wasted forty-five thousand dollars, Mr. Rea, in working up these anticipated projections, but that may be exactly what you've done.
As noted by the trial judge, the primary piece of evidence in assessing damages in this case was the tax returns filed with the Internal Revenue Service. The tax preparer for the Albins, Robert Slocum, initially submitted falsified tax returns to the defendants in order to inflate pre-derailment profits by AAA Building Supply. These returns were originally relied upon by the first accounting firm hired by the Albins, and later were used by Warren Ber in determining business losses. The fact that the Albins amassed over fifty thousand dollars in accounting fees is attributable, first, to the fact that the Albins had such poor record keeping that Mr. Ber had to resort to sorting through years' worth of check stubs and bank records to compile statistical data that still fell below accepted accounting procedures. In addition, the enormous amount of work spent by Mr. Ber on this case is attributable to the falsified tax returns by the Albins' tax preparer to the defendants, upon which Mr. Ber first relied for his accounting data. This data then had to be revised several times, as more accurate information became available. All of this work was in preparation for presenting the plaintiffs' case at trial. The fact that the work was so difficult and thus time-consuming is directly attributable *847 to the Albins and their tax-preparer. To assess their CPA's bills as costs against the defendants was an abuse of discretion. We find that accountant Warren Ber's efforts were of no value to the court in assessing damages, and therefore we find no amount should be assigned to him as costs.

ASSIGNMENT OF ERROR NO. 2
Dr. James Richardson, an economist, was awarded $8,250 in expert witness fees. Dr. Richardson prepared a report of damages, for which he billed 23 hours at $100 per hour for a total of $2,300. He then spent eight hours preparing for and attending a deposition taken in plaintiffs' attorney's office. He billed $800 for this service. Dr. Richardson then prepared a modified report, with new information (because of previous inaccurate information) and he billed $600 for six hours work amending the report. Dr. Richardson then billed for 16.5 hours, of which 2.5 hours were spent in consultation with plaintiffs' attorney, five hours reviewing the financial statements and making recommendations to plaintiffs' attorney, five hours revising his report again, and four hours reviewing the report and making modifications. He billed $1,650 for this service. Dr. Richardson then billed two hours preparation for a deposition, four hours for a deposition, six hours for meeting with the Albins, five hours case review and preparation, and 12 hours spent at the trial. For these services he billed $2,900. All of Dr. Richardson's services to the Albins throughout the preparation of their case amounted to a cost of $8,250, which amount was assessed against the defendants as costs at trial. We find that the judge abused his discretion in assessing as costs services which were in preparation of litigation. This award is reduced to $1200.

ASSIGNMENT OF ERROR NO. 3
Oren Russell, a real estate appraiser, was awarded $5,250 in expert witness fees. Russell visited the property on September 28, 1982, and took photographs of the buildings. In conjunction with Wallace Kitchens, Russell compiled an appraisal report which valued the property at $214,000. Russell's report states that AAA Building Supply sustained "100% damages" and Russell testified that the AAA Building Supply premises should be abandoned. This report valued the business losses of AAA Building Supply for 1982 and 1983 "beginning with the train derailment in 1982" at $226,394. This report, and Russell's testimony, did not prove to be of any value to the court and he is thus entitled to no award for expert witness fees.

ASSIGNMENT OF ERROR NO. 4
Michael Hining, an architect, was awarded $1,409.70 in expert witness fees. No affidavit or invoice was submitted by plaintiffs regarding Mr. Hining's fees. Hining inspected the property one time and took photographs of the buildings. He then wrote a two-page letter to Mr. Albin which detailed the damage pointed out to him by a AAA Building Supply employee and gave his opinion as to which items were related to the train derailment and which were not related. Hining testified at trial for a brief amount of time and was not required to spend much time in preparation for trial. We find that $250 is a reasonable amount to be taxed for his services as an expert witness.

ASSIGNMENT OF ERROR NO. 5
Wallace Kitchens, a real estate appraiser, was awarded $761 in expert witness fees. There was no invoice or affidavit submitted for Mr. Kitchens' services. Kitchens testified for approximately one hour. Kitchens testified that he made an appraisal of AAA Building Supply with his employer, Oren Russell. The preliminary work done by Kitchens was in preparation for a report done by Russell and was not in preparation for Kitchens' testimony at trial. Kitchens was tendered as an expert in real estate appraisal, but his testimony merely consisted of his describing AAA Building Supply and identifying photographs. This testimony did not proved useful to the court because the photographs were taken about two years after the derailment *848 and the report he contributed to was based upon unreliable figures from the plaintiffs' income tax preparer, which was of no use to the court. We find that Kitchens' testimony was of no value to the court, and we vacate the award for expert witness fees.

ASSIGNMENT OF ERROR NO. 6
Richard Fergus, a civil engineer, was awarded $400 in expert witness fees. Fergus inspected the Albin property one time, October 20, 1982, and wrote a two-page report to architect Michael Hining, outlining which items of damage out of those pointed out to him by a AAA Building Supply employee he believed were attributable to the derailment and which were not. Fergus submitted invoices to the plaintiffs' attorney for 2.5 hours travel to Livingston and a court appearance at $100 per hour for $250 total. He billed plaintiff's attorney for two hours for deposition and deposition review at $75 per hour for a total of $150. This amounted to a total of $400. He was awarded the total amount of his bill as an expert witness fee. The $150 for deposition and deposition review should not have been taxed as costs; therefore the award is reduced to $250.
While it is a general rule that the party cast in judgment should be taxed with costs, the court may assess costs of a suit in any equitable manner. La.C.C.P. art. 1920; Polk Chevrolet, Inc., v. Webb, 572 So.2d 1112, 1116 (La.App. 1st Cir.1990), writ denied, 575 So.2d 394 (La.1991). When a prevailing party is taxed with the costs of litigation, it is usually because that party in some way incurred additional costs pointlessly or engaged in other conduct which justified an assessment of costs against it. Polk Chevrolet, Inc., v. Webb, 572 So.2d 1112, 1116.
In the case sub judice, we find that much of the costs incurred by plaintiffs were caused by their own fault in failing to keep adequate business records. Therefore, for the foregoing reasons, the expert witness fees taxed as costs are reduced from $69,834.83 to $1700. Costs of this appeal are assessed against the plaintiffs.
AMENDED, AND AS AMENDED, AFFIRMED.