WELCH, J.
li>The State of Louisiana, Department of Transportation and Development (“DOTD”), appeals a judgment awarding Restructure Partners, L.L.C. (“Restructure”) a total of $700,000.00, plus costs and attorney fees, as just compensation for an expropriation of land to widen a highway. Restructure has answered the appeal seeking additional compensation, attorney fees, and expert witness fees. For reasons that follow, we amend the judgment with respect to the just compensation, attorney fees, and expert fees awarded in favor of Restructure, and as amended, affirm.
I. ACTUAL AND PROCEDURAL HISTORY
On November 9, 2001, DOTD filed a petition seeking to expropriate property located at the corner of Sharp Road and Old Hammond Highway in Baton Rouge, Louisiana. Named as defendants in the action were Restructure, the owner of the property, and Walker/Turnley Holding Corp., d/b/a Jimbo’s (“Walker-Turnley”), Restructure’s lessee. Situated on the property owned by Restructure was a Co-noco service station containing self-service *218 gasoline pumps and a convenience store. Walker-Turnley leased the convenience store, provided personnel to staff the facility, and received all profits from the sale of goods in the convenience store. Restructure retained all revenue from the sale of gasoline.
The property expropriated by DOTD was a portion of a larger tract of property owned by Restructure; however, the expropriation encompassed the entire perimeter of the property fronting Sharp Road and Old Hammond Highway and extended back to the front door of the convenience store building. Specifically, DOTD acquired full ownership of parcel 10-1, together with all improvements situated on that parcel (including the concrete parking lot, self-service gasoline pumps, and the pole for the sign for the station), and a temporary construction servitude over parcel 10-1-C-l. The public purpose requiring the expropriation |awas the widening of Old Hammond Highway from a two-lane roadway to a five-lane roadway.
Based on evaluations submitted to DOTD by certified real estate appraisers and pursuant to the order of expropriation signed by the trial court, on November 15, 2001,[1] DOTD deposited the sum of $342,364.00 into the registry of the court as the estimated just compensation for the expropriation, in accordance with La. R.S. 48:444 and 445. Immediately thereafter, all commercial activity on the property ceased. Eventually, the City of Baton Rouge/Parish of East Baton Rouge (“City/Parish”) demolished the convenience store building after condemnation proceedings were brought against Restructure.
Both Restructure and Walker-Turnley filed answers to the petition for expropriation contending that the deposited estimate of just compensation was inadequate for the property expropriated. On March 29, 2004, DOTD filed a supplemental and amending petition releasing the temporary construction servitude affecting parcel 10-1-C-l, and an order to that effect was signed by the trial court on March 30, 2004. On April 21, 2004, a trial by jury commenced on the issue of the amount of just compensation the defendants were entitled to for the taking by DOTD.
At trial, Restructure argued that: (1) it was entitled to “eost-to-cure damages” because it was possible to reopen its business at the corner of Old Hammond Highway and Sharp Road with the purchase of a vacant lot located adjacent to and north of its remaining property and (2) if commercial activity could not be resumed at the property, then it was entitled to additional compensation for its lost profits from future gasoline sales and for its lost profits for future | convenience store sales after the end of its lease with Walker-Turnley. During trial, the trial court ruled that Restructure could not introduce evidence pertaining to future lost profits from convenience store sales. Further, at the close of Restructure’s case, the trial court granted a directed verdict as to Restructure’s claim for “cost-to-cure” damages.[2]
*219 At the conclusion of trial on April 28, 2004, the jury returned a verdict in favor of Restructure and Walker-Turnley. The jury awarded Restructure a total of $700,000.00 as just compensation for the full extent of its loss. Specifically, the jury found that Restructure was entitled to $268,259.00 for value of the land and improvements permanently taken by DOTD from Restructure; $19,462.00 for the value of the temporary construction servitude taken by DOTD from Restructure; and $412,279.00 in severance damages to the remainder of Restructure’s property. Additionally, the jury awarded Walker-Turnley a total of $120,000.00 as just compensation for the full extent of its loss. Thereafter, the trial court fixed Dr. Pat Culbertson’s expert witness fees at $1,000.00, Joseph C. Dugas’s expert witness fees at $350.00, and cast DOTD with all court costs.
Thereafter, DOTD and Walker-Turnley settled their respective claims, and on June 16, 2004, the trial court signed a consent judgment awarding Walker-Turn-ley $150,000.00 in just compensation in accordance with the settlement agreement of DOTD and Walker-Turnley. On August 23, 2006, the trial court signed a judgment in accordance with the jury verdict. Restructure timely filed a motion for new trial, claiming that there were several issues remaining in the case, such as attorney fees, that had to be addressed before the trial court could sign a final judgment. The trial court granted the motion for new trial, and on November 29, 2006, Restructure filed a motion to set all remaining issues for trial. | (¡Specifically, Restructure contended that the following issues were outstanding: (1) the amount of attorney fees Restructure was entitled to; (2) the apportionment of the original $342,364.00 deposit between Restructure and Walker-Turnley; (3) the propriety of DOTD’s deposits under La. R.S. 48:455; (4) the assessment of trial and litigation costs against DOTD; (5) the proper and legal assessment of court costs under La. R.S. 13:5112; and (6) the reconsideration of the expert witness fees for Dr. Culbertson and Mr. Dugas under La. R.S. 13:3666.[3]
A trial on these remaining issues was held on April 11, 2007. Thereafter, the trial court awarded Restructure attorney fees in the amount of $60,000.00; determined that the original deposit by DOTD of $342,364.00 was intended solely for Restructure, and therefore, declined to apportion the deposit between Restructure and Walker-Turnley; determined that DOTD would be assessed with court costs in a specific dollar amount in accordance with La. R.S. 13:5112; and vacated its previous awards to Restructure for the expert witness fees of Dr. Culbertson and Mr. Dugas. A written judgment in conformity with the rulings of the trial court and the verdict of the jury was signed on May 23, 2007. It is from this judgment that DOTD has appealed and Restructure has answered the appeal.
II. ASSIGNMENTS OF ERROR
On appeal, DOTD contends that the jury’s awards for the value of the land and *220 improvements taken from Restructure and for its severance damages to its remaining property were manifestly erroneous and should be reduced to the maximum amount the jury could have awarded. DOTD further contends that if Restructure’s award of just compensation is reduced, its award of attorney fees must also be reduced so as not to exceed the statutory cap of 25% of the excess |fjudgment in accordance with La. R.S. 48:453(E).
In Restructured answer to appeal, it contends that the trial court erred in: refusing to permit Restructure from claiming loss of future convenience store profits; granting a directed verdict on its alternative theory of just compensation (the “cost-to-cure” damages); failing to properly allocate or apportion the initial deposit into the registry of the court between Restructure and Walker-Turnley; awarding inadequate attorney fees; denying Restructure’s request for expert witness fees; and assessing any costs to Restructure.
III. GENERAL LEGAL PRECEPTS
Louisiana Constitution Article I, § 4(B) provides, in pertinent part:
(1) Property shall not be taken or damaged by the state ... except for public purposes and with just compensation paid to the owner or into court for his benefit ....
(5) In every expropriation ..., a party has the right to trial by jury to determine whether the compensation is just, and the owner shall be compensated to the full extent of his loss.
Additionally, La. R.S. 48:453 provides, in pertinent part:
A.The measure of compensation for the property expropriated is determined as of the time the estimated compensation was deposited into the registry of the court, without considering any change in value caused by the proposed improvement for which the property is taken.
B. The measure of damages, if any, to the defendant’s remaining property is determined on a basis of immediately before and immediately after the taking, taking into consideration the effects of the completion of the project in the manner proposed or planned.
C. The owner shall be compensated to the full extent of his loss.
Thus, a landowner whose property is expropriated by the state is to be compensated so that he remains in an equivalent financial position to that which he enjoyed before the taking. State, Dept of Transp. & Development v. Dietrich, 555 So.2d 1355, 1358 (La.1990). The burden of proof on the property owner in an expropriation case is to establish his claims by a reasonable preponderance of the evidence; speculation, conjecture, mere possibility and even unsupported |7probability are not sufficient to support a judgment. State, Dept. of Transp. and Development v. Manuel, 93-0269, p. 3 (La.App. 3rd Cir.2/9/94), 640 So.2d 299, 301, writ denied, 94-0542 (La.4/29/94), 641 So.2d 203.
Where the landowner challenges the amount DOTD deposits as just compensation for an expropriation, a greater value must be proven by a preponderance of the evidence. State, Dept. of Transp. & Development v. Estate of Bickham, 93-1664, p. 3 (La.App. 1st Cir.6/24/94), 640 So.2d 841, 842. The question of what damages will appropriately compensate the landowner is one of fact. Id. Such a determination is necessarily dependent on evidence presented by expert witnesses; however, the factfinder is not obligated to accept an expert’s opinion in expropriation cases, since those opinions are not binding and are merely advisory in nature. Id.
*221 Severance damages may be awarded in expropriation cases when appropriate or properly proven. Bickham, 93-1664 at p. 7, 640 So.2d at 844-845. The term “severance damages” describes those compensable damages that flow from the partial expropriation of a tract of land, i.e., the difference between the value of the remaining property before and after the taking. Bickham, 93-1664 at pp. 7-8, 640 So.2d at 845. See also La. R.S. 48:453(B). The landowner has the burden of proving severance damages with legal certainty by a preponderance of the evidence. Bickham, 93-1664 at p. 7, 640 So.2d at 844. The informed and reasoned opinion of an expert, corroborated by facts in the record, may sufficiently prove a severance damage loss, particularly where it is accepted by the trier of fact. Id. The most commonly accepted and used approach for determining the amount of severance damages is the “before and after” method of appraisal. Manuel, 93-0269 at p. 4, 640 So.2d at 301. However, under certain exceptional circumstances the “before and after test” will not adequately compensate the owner for his damage and the courts will resort to the “cost-to-cure” method of computation, not|Rfor the purpose of restoration, but to gauge the diminution in market value as would be reflected in a lower purchase price that a well-informed buyer would be willing to pay. Id. It is well settled that “cost-to-cure” is a proper measure of severance damages only when it does in fact place the landowner in as good a position as he enjoyed prior to the taking, and is less than the decrease in market value otherwise caused; or where the reduction in market value approach will not adequately compensate the landowner. Id.
In an expropriation proceeding, a factfinder’s factual determinations as to the value of property and entitlement to other types of damages are subject to the manifest error standard of review, while the amount of damages awarded is subject to the abuse of discretion standard of review. See City of Baton Rouge v. Johnca Properties, L.L.C., 2003-0632, p. 8 (La.App. 1st Cir.2/23/04), 873 So.2d 693, 699, writ denied, 2004-0696 (La.5/7/04), 872 So.2d 1083. In an expropriation proceeding, the trial court (or jury) is not required to accept or reject the testimony of any particular witness, but may give whatever weight it considers appropriate to the testimony of any and all witnesses in making its factual determination of the value of the property taken. Id. The court (or jury) may reach a conclusion that does not coincide with the testimony of any witness. Id.
IV. DISCUSSION

A. Evidentiary Ruling

During the trial of this matter, the trial court ruled that Restructure could not introduce evidence regarding future lost profits from convenience store sales. In Restructure’s answer to appeal, it contends that the trial court erred in excluding this evidence.
The trial court is granted a broad range of discretion when ruling on the admissibility of evidence, and evidentiary rulings shall not be disturbed on appeal absent a clear abuse of that discretion. Grayson v. R.B. Amnion and Associates, Inc., 99-2597, p. 8 (La.App. 1st Cir.11/3/00), 778 So.2d 1, 10, writs denied, 2000-3270, 2000-3311 (La.1/26/01), 782 So.2d 1026, 1027.
According to the record, Restructure acquired the service station, including the convenience store and gasoline pumps on July 27, 1999, for the sum of $220,000.00. At that time, the convenience store was under a lease to Jimbo’s Food Mart, Inc. *222 and upon acquiring the property, Restructure continued to lease the convenience store to Jimbo’s Food Mart, Inc. On June 15, 2000, Walker-Turnley purchased Jimbo’s Food Mart, Inc. and entered into a lease of the convenience store with Restructure. The lease agreement between Restructure and Walker-Turnley was for a period of three years, commencing on June 15, 2000 and ending on June 15, 2003, with one five-year option, and then month to month thereafter. Walker-Turnley provided personnel to operate the service station and retained all profits on sales from the convenience store, while Restructure retained profits from the sale of gasoline.
As previously noted, La. R.S. 48:453 provides that the measure of compensation for property expropriated is determined as of the date of the taking. As of the date of the taking, the convenience store was leased to Walker-Turnley and Restructure received no profits from the sales at the convenience store. The only income Restructure received immediately before the taking were the profits from the sale of gasoline and the rental income from Walker-Turnley.
With regard to lost income and profits from the sale of gasoline and rent, Restructure presented the testimony of Dr. Culbertson. The testimony from Dr. Culbertson regarding profits Restructure could have made, years in the future, after its lease of the convenience store with Walker-Turnley terminated was excluded. In ruling that Restructure could not introduce such evidence, the trial court made the following observations:
At the time of the taking, Restructure did not have income other than Imthe rent from Walker-Turnley on the convenience store. So, I ... think that any projections of what Restructure would have made running the convenience store itself is beyond the scope of the expropriation statute, and it’s speculative ... it is what was going on at the time, and what income projections and income streams were available at the time of the expropriation, and the income stream available at the time of the expropriation was the sale of the gasoline and whatever rent they were getting from the lessee, Walker-Turnley, at the time, and anything beyond that ... is [not] admissible with regard to Restructure.
Because the convenience store was under lease to Walker-Turnley (for at least another year and a half) on the date of the taking, Restructure was not entitled to profits from the convenience store sales on the date of the taking. Therefore, Restructure had no claim for future lost profits as a result of the taking, and we do not find that the trial court abused its discretion in excluding evidence concerning Restructure’s claim in that regard.

B. Partial Directed Verdict (Cost-to-Cure Damages)

At the close of Restructure’s case, the trial court granted a partial directed verdict as to Restructure’s claims for “cost-to-cure” damages, thereby denying Restructure the right to present to the jury its alternative theory of compensation. This alternative theory of compensation was based on Restructure’s contention that it could reopen the service station at the subject property by purchasing a vacant contiguous lot located north of its property. The trial court granted the partial directed verdict on the basis that Restructure failed to present sufficient evidence regarding the feasibility of the proposed replacement of the business. In its answer to appeal, Restructure contends that the trial court erred in granting the partial directed verdict and requests that this court award Restructure additional com *223 pensation for the purchase of the vacant lot.
Louisiana Code of Civil Procedure article 1810 governs directed verdicts and provides as follows:
A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the | j ¶ motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made. A motion for a directed verdict that is not granted is not a waiver of a trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.
A trial court has much discretion in determining whether to grant a motion for directed verdict. Rabaiais v. St. Tammany Parish School Bd., 2006-0045, 2006-0046, p. 6 (La.App. 1st Cir.11/3/06), 950 So.2d 765, 769, writ denied, 2006-2821 (La.1/26/07), 948 So.2d 177. Generally, a motion for directed verdict is appropriately granted in a jury trial when, after considering all evidentiary inferences in the light most favorable to the movant’s opponent, it is clear that the facts and inferences are so overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict. Id. And, if there is substantial evidence opposed to the motion, i.e., evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might reach different conclusions, the motion should be denied, and the case submitted to the jury. Id. On appeal, the standard of review for legal sufficiency of the evidence challenges, such as those presented by directed verdicts, is de novo. Rabalais, 2006-0045 at p. 7, 950 So.2d at 770.
In support of its claim for “cost-to-cure” damages, Restructure offered the testimony of Mr. Lawrence Christian Dumestre, a real estate agent, Joseph C. Dugas, an expert in general contracting and cost estimating, and Mr. Jack Cecearelli, the owner of Restructure.
Mr. Dumestre testified that he was retained to represent Restructure in the acquisition of a vacant parcel of property located adjacent to and north of Restructure’s property. Mr. Dumestre testified that the vacant lot was approximately three-tenths of an acre and that it was for sale for $110,000.00.
Mr. Dugas reviewed the property owned by Restructure and prepared a cost | ^estimate to reconstruct the existing facility on the vacant adjacent lot. According to Mr. Dugas, it would cost approximately $781,093.00 to reconstruct the existing facility on the adjacent lot, including the demolition of the existing building (which had already been done by the City/Parish). Both Mr. Dugas and Mr. Cecearelli testified that an architect would be needed to design a new building, but admitted they had not consulted an architect to design a comparable facility.
The trial court determined that this evidence was insufficient to allow the issue of “cost-to-cure” damages to go to the jury because there was no evidence demonstrating that it was feasible. Restructure contends that the directed verdict was erroneous because the net result of the acquisition of the adjacent lot would have restored Restructure with at least as much property as it had before the taking. Restructure further contends that because it proved the location, price, and availability of the adjacent tract that would restore its expropriated property, it made a prima *224 facie case for entitlement to compensation in that regard.
Based upon our de novo review of the matter, we find that Restructure failed to present sufficient evidence to establish it was entitled to “cost-to-cure” damages to acquire the adjacent lot and rebuild the facility. Restructure bore the burden of proof, by a preponderance of the evidence as to its claim for cost-to-cure damages, and such claim must not be too remote or speculative. “Cost-to-cure” damages must actually place the landowner back into the financial or pecuniary position that he was in before the taking. While the evidence established that the adjacent lot was for sale, Restructure presented no evidence that rebuilding a gasoline service station/convenience store would be permissible on that lot under zoning and other regulations. Mr. Dugas testified that he did a cost analysis on a comparable facility; however, no architect or engineer testified or was even engaged to evaluate or design a store, even though Mr. Ceccarelli and Mr. Dugas both testified that such analysis by such experts was necessary. Restructure also failed to present |13evidence that a rebuilt facility would be capable of operating or would restore Restructure’s operating capability. The trial court correctly recognized that Restructure’s claim for “cost-to-cure” damages was speculative and it had failed to introduce sufficient evidence to support the claim. Therefore, we find that the trial court properly granted the partial directed verdict dismissing Restructure’s claim for “cost-to-cure” damages.

C. The Jury’s Award of Just Compensation

The jury awarded Restructure a total of $700,000.00 as just compensation for the taking by DOTD. This award was divided as follows: (1) $268,259.00 for the value of the land and improvements permanently taken by DOTD (ie., parcel 10-1) on the date of the taking; (2) $19,462.00 for the value of the temporary construction servitude taken by DOTD (i.e., parcel 10-1-C-1) from the date of the taking until March 30, 2004, when it was released by DOTD; and (3) $412, 279.00 as severance damages to the remainder of Restructure’s property as of the date of the taking.
The jury’s award to Restructure for the value of the temporary construction servitude over parcel 10-1-C-l taken by DOTD was based on the testimony of Samuel J. Kennedy, an expert commercial real estate appraiser. Mr. Kennedy testified that the compensation due Restructure for the taking was $19,462.00. On appeal, neither DOTD nor Restructure have challenged the award by the jury in this regard. However, DOTD has challenged the jury’s awards to Restructure for the value of the land and improvements taken by DOTD and the severance damages to Restructure’s remaining property as a result of the expropriation.

1. Value of Property and Improvements Taken

Louisiana Revised Statutes 48:453 requires the compensation for property taken to be valued as of the date of the taking. David Pourciau, a real estate appraisal manager for DOTD, testified that there are three methods appraisers | ushould consider when appraising property; namely the “cost approach,” the “market approach” and the “income approach.” The cost approach method requires the appraiser to first determine the cost of building the improvements new, and then to depreciate those costs to the condition that they existed on the date of the taking. The market approach compares the property to sales of similar properties, while the income approach analyzes the income of the property and the market itself. In an expropriation, DOTD generally uses the *225 highest value placed on the property by an appraisers using these methods to determine the just compensation to which the landowner is entitled. In this case, DOTD determined that the cost approach yielded the highest value for Restructure’s property that it sought to expropriate.
DOTD presented the testimony of Greg Lusignan, a general contractor and construction cost consultant. Mr. Lusig-nan testified that it would cost $487,743.00 to replace Restructure’s facilities with new equipment. Mr. Kennedy then incorporated Mr. Lusignan’s construction cost figures into his appraisal. Mr. Kennedy determined that the depreciation for all of the improvements on Restructure’s property was $268,259.00. Therefore, Mr. Kennedy opined that based on the cost approach, the value of all of the improvements on Restructure’s property before the taking was $219,484.00. Mr. Kennedy further testified that based on comparable sales and the cost approach, the estimated unit value for all of Restructure’s land was $213,944.00 (or $9.50 per square foot). Because the expropriation of parcel 10-1 consisted of 8,668.44 square feet of land with the improvements, Mr. Kennedy opined that the value of the land and improvements within parcel 10-1 was $156,230.00. This value for the land and improvements within parcel 10-1 on the date of the taking was not contradicted by any other witness and Restructure offered no other testimony or evidence as to the value of the land and improvements within parcel 10-1. However, the jury awarded 11B$268,259.00 for the value of land and improvements permanently taken by DOTD within parcel 10-1.
Although the jury was not obligated to accept the testimony of Mr. Kennedy and was entitled to give his testimony as much weight as it deemed appropriate, there must still be a reasonable factual basis for the jury’s factual findings on the value of the property taken. According to our review of the record, the only basis for the jury’s conclusion that the value of the land and improvements taken was $268,259.00 was the testimony of Mr. Kennedy who opined that the depreciation to be deducted from the cost of building the improvements new was $268,259.00. However, DOTD did not take the depreciation of all the improvements from Restructure; it took the land and improvements within parcel 10-1. Thus, Restructure was only entitled to just compensation for the value of the land and improvements within parcel 10-1 on the date of the taking. Therefore, the jury’s award to Restructure for the value of the land and improvements in the amount of the depreciation of all of the improvement was without a factual basis and clearly wrong. Since Mr. Kennedy presented the only testimony regarding the value of Restructure’s land and improvements within parcel 10-1 on the date of the taking, we hereby reduce the jury’s award for the value of the land and improvements permanently taken from Restructure to $156,230.00.

2. Severance Damages

Louisiana Revised Statutes 48:453(B) provides that severance damages are determined on the basis of immediately before and immediately after the taking. As previously noted, Mr. Kennedy opined that the value of all of the improvements on Restructure’s property before the taking was $219,484.00, that the value of all of Restructure’s land was $213,944.00, and that the value of the land and improvements taken within parcel 10-1 was $156,230.00 on the date of the taking. Given these numbers, Mr. Kennedy testified that the value of all improvements |1firemaining on Restructure’s property after the taking was $145,604.00. Mr. Kennedy also testified that the remaining *226 improvements had no value after the expropriation. Thus, DOTD has conceded, on appeal, that Restructure is entitled to severance damages for the improvements remaining on Restructure’s property of at least $145,604.00.
Mr. Kennedy testified that the cost of demolishing the existing improvements on the remainder of Restructure’s property was a proper element of Restructure’s severance damages. Mr. Lusignan estimated the cost of demolishing the remaining improvements to be $40,000.00. Mr. Kennedy testified that he incorporated Mr. Lu-signan’s demolition cost into his calculation of severance damages. Mr. Dugas estimated the demolition costs for all of the improvements on Restructure’s property to be $42,000.00. Mr. Ceecarelli testified that when the City/Parish demolished the convenience store, it placed a $4,245.00 demolition lien on the property, and Restructure was cast with court costs in the amount of $115.00.
Mr. Ceecarelli testified that when Restructure purchased the property from Murphy Oil, Restructure opted not to sell Murphy Oil products (which were sold under the “Spur” logo) and “branded” itself a Conoco station. Conoco required its service stations to have two public restrooms on the outside of its facility and gasoline pumps with computer systems capable of accepting payment for the gasoline by credit card. Mr. Ceecarelli testified that those gasoline pumps and the computer systems cost Restructure approximately $55,387.00, that Restructure spent approximately $18,000.00 on labor to install the gasoline pumps and computer systems, and another $46,900.00 for the cost of construction of the two new restrooms. Mr. Ceecarelli also testified that while Conoco owned the actual sign for the store, Restructure owned the pole for the sign, which cost approximately $15,000.00. Mr. Ceecarelli admitted that Restructure has retained |17possession of the gasoline pumps and computer systems; however, he explained that both the pumps and computer systems are worthless because they have Conoco Labels on them, and therefore, can only be used at Conoco service stations.
Mr. Ceecarelli testified that before the expropriation, Restructure received rental income from the convenience store in the amount of $250.00 per month; however, the rental income ceased after the expropriation. Additionally, Mr. Ceecarelli testified that Restructure received a net profit of approximately $100,000.00 per year from the sale of gasoline that likewise ceased after the expropriation.
Considering all of the evidence, the jury awarded Restructure severance damages in the amount of $412,279.00. DOTD contends that the jury’s award in this regard is not supported by the evidence and that the maximum amount the jury could have awarded was $273,991.00 (ie., $145,604.00 for the value of the improvements remaining on Restructure’s property that were rendered useless after the expropriation; $40,000.00 for demolition costs; and $88,387.00 for the value of the gasoline pumps, computer system, labor, and the sign pole.) We agree; however, we believe the evidence also supports an award of $46,900.00 for the cost of constructing the two new public restrooms which were later destroyed in the demolition of the convenience store.
Although Restructure argued that it was entitled to the lost rental income and lost profit from gasoline sales as part of its just compensation for the expropriation, the jury was presented with a choice on the verdict form of two alternative measures of compensation due Restructure. It could have either awarded Restructure just compensation for the property taken by DOTD *227 and severance damages for the remaining property or it could award Restructure just compensation for its lost profits, loss of business value, and other items of potential loss. In other words, Restructure could be compensated for its losses as the “owner |1sof assets” or as the “owner of income,” but not both. Because the jury in this case determined that it would compensate Restructure for the value of the property taken by DOTD and its severance damages, compensation for lost profits and loss of business value could not be included in the jury’s award of severance damages to Restructure. And our review of the record reveals no other losses that the jury could have included in its award of severance damages. Accordingly, we find that the jury abused its discretion in its award of severance damages and we hereby reduce that award to $320,891.00,[4] the highest amount that was within the jury’s discretion.
For all of the above and foregoing reasons, the judgment rendered on the jury verdict is hereby amended to provide for an award of just compensation to Restructure in the amount of $496,583.00.

D. The Deposits into the Registry of the Court

After the initial deposit of $342,364.00 by DOTD on November 15, 2001, DOTD made supplemental deposits into the registry of the court on December 7, 2005, in the amount of $41,298.75 and on October 18, 2006, in the amount of $418,376.94. According to its motion to deposit the funds into the registry of the court, DOTD stated the first supplemental deposit of $41,298.75, represented $33,932.00 in principal and $7,366.75 in interest. According to its second motion, DOTD stated that the $418,376.94 deposit represented $323,704.00 in principal and $94,672.94 in interest. Restructure contends that DOTD was without authority to direct that deposits made into the registry of the court be apportioned to principal or interest or to a particular party.
Although Restructure claimed that this was an issue remaining in the case to be resolved by the trial court at the April 11, 2007 hearing, the trial court’s oral 119reasons for judgment and the May 23, 2007 judgment of the trial court are silent as to the issue. In Restructure’s answer to appeal, Restructure contends that the trial court erred in failing to rule on DOTD’s “authority to ‘direct’ deposits to a particular defendant into the registry of the court, or otherwise to impute [the deposits] to principal or interest due.” When a judgment is silent as to a claim or demand, it is presumed that the trier of fact denied the relief sought. See Caro v. Caro, 95-0173, p. 7 (La.App. 1st Cir.10/6/95), 671 So.2d 516, 520. Accordingly, we conclude that the trial court denied Restructure’s request.
DOTD maintains that its total deposits of $802,039.69 into the registry of the court represent all sums due Restructure. However, Restructure contends that DOTD owes additional funds because it did not consent to the deposits, as apportioned by DOTD, and therefore any funds deposited were attributable to interest first, in accordance with La. C.C. art. 1866. Louisiana Civil Code article 1866 provides:
An obligor of a debt that bears interest may not, without the obligee’s consent, impute a payment to principal when interest is due.
*228 A payment made on principal and interest must be imputed first to interest.
At the outset, we note that La. C.C. art. 1866 applies only to the “obligor of a debt that bears interest.”
At the pertinent time period herein, La. R.S. 48:455 provided as follows:
If the amount finally awarded for compensation exceeds the amount deposited [into the registry of the court], the judgment shall include legal interest on the excess from the date of presentation of the petition ... until paid, but such interest shall not accrue on any award made for expert fees or attorney fees prior to judgment.[5]
Thus, under this statute, DOTD was not an “obligor of a debt” bearing interest until there was a judgment in favor of Restructure exceeding the amount 12ndeposited by DOTD into the registry of the court. The judgment in favor of Restructure exceeding the amount deposited into the registry of the court was signed on May 23, 2007. Therefore, any deposits made by DOTD prior to that date, such as the deposits at issue in this appeal, do not fall under the provisions in La. C.C. art. 1866. Accordingly, we find no merit to Restructure’s argument in this regard and find no error in the trial court’s implicit denial of Restructure’s request for relief.
Also at issue in the April 11, 2007 hearing was Restructure’s contention that the original deposit of $342,364.00 by DOTD had to be apportioned or allocated between Restructure and Walker-Turnley in the same proportion as the jury verdict in favor of Restructure and Walker-Turn-ley (ie., $700,000.00/$120,000.00 or 85.36%/14.64%). Essentially, Restructure sought to have the original deposit allocated in this manner so that amount of excess judgment in favor of Restructure would be increased from $357,636.00 ($700,000.00-$342,364.00) to $407,758.09 ($700,000.00-$292,241.91[6]), thereby also increasing the amount of interest owed by DOTD (and the amount of attorney fees that could be awarded in favor of Restructure). After considering the evidence, the trial court concluded that the original deposit in the amount of $342,364.00 would be allocated to Restructure for all purposes. In Restructure’s answer to appeal, it contends that the trial court erred in this regard.
In ruling that the original deposit would be allocated solely to Restructure, the trial court stated as follows:
Restructure argues that paragraph thirteen of [DOTD’s] petition supports its position. I went back and reviewed again paragraph thirteen, as well as the remainder of the original petition; and I see nothing therein to support Restructure’s position. Rather, the appraisals that were attached to the petition, which were affirmed by the testimony of those appraisers at trial, show that absolutely no value was allocated for [Walker-Turnley] or for any leasehold value, Li or anything else in the initial deposit. Furthermore, the jury specifically found in response to an interrogatory ... that there was no leasehold advantage at this location. Also, [DOTD] has consistently and continually, as evidenced by the documents admitted at this hearing, taken the position that no part of the deposit was intended for Walker-Turnley.
Accordingly, I reject Restructure’s position that there needs to be some allo *229 cation of the deposit between Restructure and Walker-Turnley.
Louisiana Civil Code article 1853 provides, in pertinent part, “A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it.” To constitute a judicial confession, the statement must be the express acknowledgement of an adverse fact, the effect of which is to waive evidence as to the subject matter of the admission or to withdraw the matter from issue. City of Shreveport v. Noel Estate, Inc., 41,148-41,156, p. 7 (La.App. 2nd Cir.9/27/06), 941 So.2d 66, 74, writ denied, 2006-2774 (La.1/26/07), 948 So.2d 171. Additionally, the adverse party must have believed the fact was no longer at issue or must have relied on it, to his detriment, before it can be a judicial confession. Id.
We note that the June 16, 2004 consent judgment between DOTD and Walker-Turnley (wherein they settled their respective claims against each other) specifically provided that no part of the $150,000.00 settlement between DOTD and Walker-Turnley was part of the original deposit. Specifically, this judgment provided as follows:
Considering the Joint Petition filed herein by Plaintiff and Defendant, [Walker-Turnley], showing that an agreement and settlement has been reached herein by said parties; and in accordance with said Joint Petition, that Defendant desires to accept the total amount of $150,000.00 as a final award of just and adequate compensation for the property and property rights expropriated and in full settlement of all damages to the property and/or to [Walker-Turnley], and any other claims of, or by, [Walker-Turnley]; that the said amount of $150,000.00, none of which was heretofore deposited in the registry of the 19th Judicial District Court, includes [all claims of Walker-Turnley] ....
(Emphasis added.)
I22TMS June 16, 2004 judgment is now a final judgment. Any challenge to the terms of that judgment by Restructure, for instance by suggesting Walker-Turn-ley did in fact have an interest in funds already deposited into the registry of the court, would be an impermissible collateral attack on the judgment.
Furthermore, we note that on February 15, 2006, Restructure filed a motion and order to withdraw funds, specifically alleging that “Plaintiff [DOTD] in accordance with law, has deposited into the registry of the Court the sum of $383,662.75 [the original deposit of $342,364.00 plus the supplemental deposit for interest of $41,298.75] for just compensation for the taking of Mover’s [Restructure’s] property in these expropriation proceedings.” And further alleging that “Mover [Restructure] is entitled to withdraw the deposit, with accrued interest, pursuant to [La.] R.S. 48:449.” Thus, in this motion, it appears that Restructure represented to the trial court that the entire amount of the original deposit was the just compensation due Restructure in this proceedings.
Similarly, Restructure, in a motion to withdraw deposit filed in these proceedings on December 20, 2002 (before the jury trial of this matter), represented to the trial court that:
3.
Pursuant to [La.] R.S. 48:444, [DOTD] deposited the sum of $342,364.00 into the registry of the Court as an estimate of just compensation in this matter.
4.
[DOTD] has stipulated that the deposit of $342,364.00 was deposited exclusively *230 for the interest and benefit of Defendant [Restructure],
5.
As a consequence [Restructure] is entitled to withdraw the funds on deposit in the registry of the Court, with interest, as the party entitled thereto under [La.] R.S. 48:449.
And, in opposing Walker-Turnley’s attempt in late 2001 to withdraw half of the deposit, Restructure argued to the trial court that:
13athe facts of this case clearly establish that “the person entitled” to the deposit in this matter is Restructure.... [DOTD made a] final written offer ... to Restructure dated October 8, 2001, offering the amount of $342,364.00 to [Restructure] for its interest in the property expropriated. Thereafter [DOTD] filed suit on November 9, 2001, depositing the identical amount of $342,364.00 into the registry of the Court.
Clearly, the deposit belongs solely to Restructure as “the person entitled thereto.” This is further borne out by the fact that [DOTD] has acknowledged that its appraisers made no attempt to ascertain the loss of [Walker-Turnley] in this matter. It is very clear that the entire deposit was calculated to address the interest of the owner, Restructure, and not that of [Walker-Turnley]. As such, clearly Restructure is entitled to the deposit and [Walker-Turnley] has no claim thereto.
If [Walker-Turnley] is owed money from [DOTD], it should not come from Restructured deposit, but should instead come from application of [Walker-Tum-ley’s] rights under [La.] R.S. 48:450-451.
According to the record, this is precisely what happened — Walker-Turnley’s just compensation came from the $150,000.00 deposit, as the consent judgment between Walker-Turnley and DOTD specifically provides. And, Restructure could not have been clearer in its numerous assertions to the trial court that the entire original deposit was intended solely for Restructure. As such, we find that Restructure has judicially confessed that the entire initial deposit of $342,364.00 was intended solely for Restructure. Restructure cannot now claim that the original deposit was not intended solely for Restructure and therefore, should be allocated between Restructure and Walker-Turn-ley.
To the extent that Restructure argues, on appeal, that the statements it made to the trial court when both Walker-Turnley and Restructure initially attempted to withdraw the deposit (before the jury trial), were not judicial confessions because the trial court denied the relief sought and determined that the jury would determine the rights of each party to the deposited funds, we find to the contrary. The trial court’s oral reasons for judgment when it denied both Walker-Turnley’s motion and Restructure’s motion to withdraw the funds, reflect that it was simply [ ^refusing to determine what compensation each party was entitled to, until after a trial on the merits. In other words, the trial court was simply deferring its ruling on what the parties were entitled to; it did not establish, one way or the other, anything regarding who the deposit was for nor did the trial court’s ruling change the judicial confessions of Restructure and the finality of the judgment regarding Walker-Turn-ley.
Therefore, based on our review of the record, we find no error in the trial court’s determination that all of the $342,364.00 initial deposit by DOTD was to be allocated solely to Restructure.

*231
E. Award of Attorney Fees

After the hearing on April 11, 2007, the trial court awarded Restructure attorney fees in the amount of $60,000.00, plus interest from the date of judgment until paid. In its answer to appeal, Restructure contends that the trial court’s award of attorney fees was inadequate considering the evidence submitted by Restructure at the hearing on the issue and the efforts by counsel for Restructure in bringing these expropriation proceedings to final judgment. Restructure also asserts that the trial court erred in refusing to allow Restructure access to DOTD’s time logs, billing statements, and related records in this case, and further erred in not considering the testimony of Restructure’s expert witnesses on the issue of the attorney fees. Therefore, Restructure requests that this court increase the trial court’s award of attorney fees and award additional attorney fees for work performed on this appeal.
On the other hand, DOTD contends that if the award of just compensation due Restructure is reduced, then Restructure’s award of attorney fees must likewise be reduced to no more than 25% of any award of compensation over the initial deposit of $342,364.00, in accordance with La. R.S. 48:453(E).
Attorney fees are not allowed except where authorized by statute or contract. State, Dept. of Transp. and Development v. Williamson, 597 So.2d 439, 441 (La.1992). In a case where DOTD expropriates property pursuant to La. R.S. 48:441, et seq., La. R.S. 48:453(E) provides statutory authority for such awards. Id. That statute provides:
Reasonable attorney fees may be awarded by the court if the amount of the compensation deposited in the registry of the court is less than the amount of compensation awarded in the judgment. Such attorney fees in no event shall exceed twenty-five percent of the difference between the award and the amount deposited in the registry of the court.
Attorney fees in expropriation cases are discretionary with the trial court. Williamson, 597 So.2d at 441. Courts may inquire as to the reasonableness of attorney fees as part of their prevailing, inherent authority to regulate the practice of law. Williamson, 597 So.2d at 441-442. Louisiana Revised Statutes 48:453(E) provides that reasonable attorney fees may be awarded by the court but in no event shall exceed 25% of the difference between the award and the amount deposited into the registry of the court. Williamson, 597 So.2d at 442. Factors to be taken into consideration in determining the reasonableness of attorney fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment and skill of the attorneys; (7) the number of appearances made; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court’s own knowledge. Id.
In oral reasons for judgment the trial court noted that an award of attorney fees in an expropriation case was solely within the discretion of the trial court. The trial court then stated that it would make an award of attorney fees, although it was “sorely tempted” not to do so because of the behavior of counsel for Restructure throughout the proceedings. The trial court then thoroughly analyzed each and every Williamson factor and determined that an award of attorney fees in the 12r,amount of $60,000.00 would be reasonable in this case. Notably, the trial court’s award was made after the jury’s award of just compensation to Restructure in the *232 amount of $700,000.00, and was less than 17% of the excess judgment for compensation over the initial deposit of $342,364.00.
However, for reasons specifically detailed hereinabove, we have amended the jury’s award of just compensation to Restructure to reflect an award of $496,583.00. Since the original deposit in this matter was $342,364.00, the excess judgment for compensation over the initial deposit is $154,219.00. As previously noted, La. R.S. 48:453(E) limits the attorney fees that may be awarded in an expropriation proceeding to 25% of the excess of the award of just compensation above the amount originally deposited. Because the trial court’s award of attorney fees in the amount of $60,000.00 now exceeds the maximum award of attorney fees allowed by statute, we hereby amend the judgment of the trial court to provide for an award of attorney fees in the amount of $38,554.75[7] plus legal interest from judgment until paid, the maximum amount allowed by law.
As we have amended the judgment on attorney fees to provide for an award of the maximum amount allowed by law, we pretermit discussion of Restructure’s remaining assignments or error on this issue (i.e., that the trial court’s factual findings on the issue of attorney fees were interdicted by its ruling denying Restructure access to DOTD’s records and its statements that it was not going to “consider” the testimony of any attorneys in setting Restructure’s award of reasonable attorney fees).
As for Restructure’s contention that it should be awarded additional attorney fees for services rendered on appeal, we again note that the award of attorney fees herein is twenty five percent of the difference between the award of just compensation and the amount deposited into the registry of the court — the ^maximum allowed by statute. We can find no authority for increasing that maximum award on appeal, and therefore, we hereby deny Restructured request for additional attorney fees on appeal.
F. Failure to Assess Expert Witness Fees
After the conclusion of the jury trial, the trial court awarded Restructure expert witness fees in the amount of $350.00.00 for Mr. Dugas and $1,000.00 for Dr. Culbertson. At the hearing on the motion to conclude remaining issues for trial, the trial court recalled and vacated those awards and made no assessment against DOTD for those two expert witness fees. Citing St. Tammany Parish Hosp. Service Dist. No. 2 v. Schneider; 2000-0247 (La.App. 1st Cir 5/11/01), 808 So.2d 576 and Town of Walker v. Stafford, 2001-2188 (La.App. 1st Cir.10/18/02), 833 So.2d 349, writs denied, 2003-0441, 2003-0524 (La.4/25/03), 842 So.2d 400, 405, the trial court concluded that because a substantive judgment had not been rendered in favor of Restructure on the claims or issues that Mr. Dugas testified in regards to (because the claim was dismissed on a directed verdict) or on the issue that Dr. Culbertson testified in regards to (because the jury chose to compensate Restructure on an alternative theory of compensation), it was without authority to award Restructure those expert fees. However, the trial court noted that if it had authority to award such fees, it would have increased the award for Dr. Culbertson’s expert witness fees to $2,000.00.
In St. Tammany Parish Hospital Service District No. 2 and Town of Walker, the plaintiffs were political subdivisions who filed expropriation suits against the defendants. As a result of the suits, de *233 fendants incurred substantial attorney fees and expert fees in preparation of litigation. Prior to trial, the expropriation suits were dismissed upon the motion of the plaintiffs. Thereafter, the defendants sought awards of attorney fees and expert witness fees. We noted in those cases that although La. R.S. 13:5112 allows the court to impose expert Isriwitness fees against a political subdivision, such an award is only appropriate when a substantive judgment has been rendered in favor of the party requesting such an award. St. Tammany Parish Hospital Service District No. 2, 2000-0247 at pp. 15-16, 808 So.2d at 589 and Town of Walker, 2001-2188 at p. 13, 833 So.2d at 356. We then determined in both of those cases that since there was no substantive judgment in favor of the defendants, but rather, a dismissal without prejudice of the expropriation action pursuant to a motion by the plaintiff, there was no legal basis for an award of expert witness fees in favor of the defendants.
We do not interpret St. Tammany Parish Hospital Service District No. 2 and Town of Walker, as the trial court did, to require a substantive judgment in favor of the party requesting the award on each particular issue that each particular expert witness testifies in regards to. Rather, we find all that is required to impose expert witness fees against a political subdivision in accordance with La. R.S. 13:5112 is a substantive judgment in favor of the party requesting the award, provided the expert witness fees were reasonably necessary to the presentation of that party’s case. See Missouri Pacific R. Co. v. Nicholson, 460 So.2d 615, 629 (La.App. 1st Cir.1984), writs denied, 462 So.2d 185, 186 (La.1985). In this case, there was a substantive judgment in favor in favor of Restructure against DOTD, and the opinions of Mr. Dugas and Dr. Culbertson were reasonably necessary to the presentation of Restructure’s case. Therefore, Restructure was entitled to an award of expert witness fees, and the trial court erred in concluding otherwise.
As previously noted the trial court originally awarded expert witness fees for Mr. Dugas in the amount of $350.00 and subsequently determined that if it could award expert witness fees for Dr. Culbertson, it would have increased his fee from the $1,000.00 originally awarded to $2,000.00. A trial court has great discretion in fixing expert witness fees. Relevant factors to be considered by the trial court in fixing expert witness fees include the time spent testifying at trial, time spent in | ¡^preparation for trial, time spent away from regular duties while waiting to testify, the extent and nature of the work performed, and the knowledge, attainments, and skill of the experts. Albin v. Illinois Cent. Gulf R. Co., 607 So.2d 844, 845 (La.App. 1st Cir.1992). Additional considerations include helpfulness of the expert’s report and testimony to the trial court, the amount in controversy, the complexity of the problem addressed by the expert, and awards to experts in similar cases. Id., 607 So.2d at 845-846. Based on our review of the record, we find an award of expert witness fees in the above amounts previously determined by the trial court to be warranted to be appropriate, and therefore, we hereby amend the judgment of the trial court to reflect an award of expert witness fees for Mr. Dugas in the amount of $350.00 and an award of expert witness fees for Dr. Culbertson in the amount of $2,000.00.

G. Court Costs

At the hearing on the motion to conclude remaining issues for trial held on April 11, 2007, the trial court assessed all court costs through the date of that hearing *234 against DOTD in conformity with La. R.S. 13:5112. However, the trial court assessed all court costs associated with the motion to conclude the remaining issues for trial and all court costs thereafter to Restructure. Lastly, the trial court ordered that 2/3 of the cost of the deposition of counsel for Restructure be assessed against Restructure.
Restructure contends that the trial court’s ruling assessing it with costs from April 11, 2007 forward was erroneous because Restructure prevailed on the main issue before the court on that date (i.e., attorney fees). A trial court is given great discretion in taxing court costs in any manner it deems equitable. See La. C.C.P. art. 1920. Although it is a general rule that the party cast in judgment is taxed with costs of the proceedings, the trial court may assess costs in any equitable manner and its assessment will not be reversed on appeal in the absence of an abuse of discretion. Coulee Kinney Drainage Dist. v. Broussard, 2007-175, pp. 5-6 (La.App. 3rd Cir.10/3/07), 966 So.2d 1191, 1195.
In this case, although Restructure may have prevailed against DOTD on the issue of attorney fees, the trial court’s award of attorney fees was substantially less than the amount sought by Restructure at that hearing. Additionally, Restructure did not prevail on the other six issues before the trial court on that date. At the conclusion of the hearing, the trial court obviously determined that it would be equitable to assess court costs associated with the motion to conclude the remaining issues for trial and thereafter to Restructure. Under these circumstances, we cannot say that the trial court abused its vast discretion in that regard.
V. CONCLUSION
For all of the above and foregoing reasons, the May 23, 2007 judgment of the trial court is hereby amended to provide an award of just compensation to Restructure Partners, L.L.C. in the amount $496,583.00; to provide for an award of attorney fees to Restructure Partners, L.L.C. in the amount of $38,554.75; and to provide for an award of expert witness fees for Joseph C. Dugas in the amount of $350.00 and an award of expert witness fees for Dr. Pat Culbertson in the amount of $2,000.00. As amended, the judgment of the trial court is hereby affirmed.
All costs of this appeal in the amount of $9,356.00 are hereby assessed to the defendant, Restructure Partners, L.L.C. and to the State of Louisiana, Department of Transportation and Development, in equal amounts of $4,678.00.
AMENDED, AND AS AMENDED, AFFIRMED.
PETTIGREW, J., concurs.

. The parties refer to the date of the taking in this matter as November 14, 2001, the date the trial court signed the order of expropriation. However, we note that La. R.S. 48:444 and 445 provides that the property is taken and title vested in DOTD upon the deposit of just compensation into the registry of the court, which in this case, was on November 15, 2001. Therefore, we will consider November 15, 2001, to be the date of the taking in this matter.

. This court denied a supervisory writ application filed by Restructure with regard to the trial court’s evidentiary ruling on future lost profits for convenience store sales and its ruling granting the directed verdict. See State, DOTD v. Restructure Partners, LLC, *219 2004-0902 (La.App. 1st Cir.4/26/04) (unpublished writ action).

. Restructure also contended that the constitutionality of the 25% statutory cap on any award of attorney fees under La. R.S. 48:453(E) was also at issue. Because the amount of attorney fees the trial court ultimately awarded was less than 17% of the excess judgment, the trial court concluded that the issue was moot. Neither the constitutionality of the statutory cap on an award of attorney fees in expropriation proceedings nor the trial court’s ruling that the issue was moot in this case has been raised as an issue in this appeal.

. This amount includes $145,604.00 for the value of the improvements remaining on Restructure’s property that were rendered useless after the expropriation; $40,000.00 for demolition costs; and $135,287.00 for the value of the gasoline pumps, computer system, labor, sign pole, and new restroom construction.

. Louisiana Revised Statutes 48:455 was amended by 2006 La. Acts, No. 322 § 1, effective July 1, 2006, to provide for legal interest on the excess from the date the defendant files an answer instead of from the date of the presentation of the petition.

. 85.36% of $342,364.00 =$292,241.91.

. 25% of $154,219.00 is $38,554.75.